**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bobby J. LAWSON, Defendant-Appellant.**

No. 75–2085
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Nov. 20, 1975.

Rehearing and Rehearing En Banc Denied Dec. 22, 1975.

---

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Herbert Shafer, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., Atlanta, Ga., Mervyn Hamburg, Reuben H. Wallace, Jr., Washington, D. C., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Bobby J. Lawson was convicted of violating 18 U.S.C. § 1955, which prohibits conducting an illegal gambling business, and conspiring to commit that offense in violation of 18 U.S.C. § 371.[1] At trial the parties stipulated that a conspiracy existed and that members of the conspiracy were involved in an illegal gambling enterprise; the only questions for the jury were whether Lawson was a member of the conspiracy and whether he committed a substantive violation of § 1955. After a careful review of the record and briefs, we conclude that Lawson's appeal is without merit and affirm the conviction.

1. Thirty-six others were indicted along with Lawson, all charged with the same violations; appellant's case was severed.

His central contention is that there was insufficient evidence to show that he was a member of the conspiracy. Specifically, he objects to the court's denial of a motion to strike evidence concerning telephone calls from Pat Hall to Mary Ann Sheffield; the admission of the testimony of his former attorney; and, the sufficiency of the identification of him by two government witnesses.

The government presented expert testimony concerning the manner in which a numbers operation is conducted, how this particular organization operated, and the roles of various conspirators. The testimony of other government witnesses connected appellant with the conspiracy through his participation, along with the kingpin of the operation, in collecting money from a relay station and in attempting to resolve a dispute concerning possible cheating by members of the conspiracy.

The government introduced wiretaps of telephone conversations between Mary Ann Sheffield, a co-defendant, and Pat Hall, Lawson's alleged agent.[2] Calls over the Sheffield telephone were monitored for a total of ten days. During that period, Sheffield received four calls from Pat Hall in which Hall furnished Sheffield with wagers on various numbers. On at least three of these occasions, Hall stated, "I'm calling for Bobby" prior to providing the wagers. On each occasion, a few hours after Hall's call, Sheffield received a call informing her of the day's winning number, whereupon she immediately placed calls to both Hall and Lawson to inform them of the number. Although Hall was not indicted, she was alleged to be Lawson's paramour, and acting for him in giving and receiving information on the numbers racket.

██ He alleges that neither the wiretaps nor other evidence demonstrated who "Bobby" was or that Pat Hall was his agent and acting on his behalf, and therefore the transcripts of the Hall-

Sheffield calls should have been stricken. There was sufficient independent evidence of appellant's participation in the conspiracy to make admissible against him Hall's statements, *United States v. Prieto,* 505 F.2d 8, 11 (5th Cir. 1974), provided she may properly be considered a co-conspirator even though not so named in the indictment. This requires "a showing of a likelihood of an illicit association between the declarant and the defendant," *Park v. Huff,* 506 F.2d 849, 859 (5th Cir. 1975) (en banc), which may be proved by "totally circumstantial" evidence. *Id.* Here, Sheffield notified Hall and Lawson almost simultaneously of the day's winning number. Moreover, the government's expert testified that the figures called in by Pat Hall for "Bobby" were not the wagers of an individual customer, but represented the account of either a "book" or a writer in the organization, or an independent "banker" who was "laying off" bets to the organization, i. e., in either case, a person who collects bets from the individual wagerers. The jury was cautioned as to the limitations on the wiretap evidence, and was told that it could not conclude, by Hall's declarations alone, that she was in fact acting for Lawson. Other evidence connecting Hall and Lawson included a phone call from Hall to Lawson's former attorney, discussed below, and the fact that she was with Lawson when he was arrested and had been seen with him on several occasions in subsequent months. Viewed in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941), there was substantial evidence from which the jury could conclude that Hall's telephone calls were made with the knowledge of and on behalf of Lawson.

██ Lawson also contests the admissibility of the testimony of his former attorney, Wesley Asinof. He was called by the prosecution and related an evening telephone call from Hall during the trial in which she stated, "This is Pat

---

2. Lawson raises no issue on this appeal concerning the admissibility of the wiretap evidence. The interceptions were conducted pursuant to an order of the district court as required by 18 U.S.C. §§ 2516–18.

Hall. . . . Herb [appellant's attorney] called Bobby and said for us to get in touch with you and tell you to be in Court tomorrow morning at 9:00 o'clock."[3] Lawson originally objected to this testimony as hearsay, but then withdrew the objection. He now argues that its admission was plain error. Fed.Rules Crim.Procedure 52(b). No privilege was or is claimed. It cannot be said that substantial rights of Lawson were prejudiced by this testimony, *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), or that its admission resulted in a "clear miscarriage of justice," *Mims v. United States,* 375 F.2d 135, 147 (5th Cir. 1967).

■ Lawson further contends that witnesses Wilson and Solomon failed to identify him in court, and that Solomon's testimony was prejudiced by a pretrial photographic display that was constitutionally deficient. The record reveals that these contentions are groundless. He was identified by both witnesses at trial, and the display shown to Solomon contained a number of photographs and thus was not "so impermissibly suggestive" as to require reversal. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247, 1253 (1968).

■ It is well settled that *"where the existence of a conspiracy is shown, . . . only slight additional evidence is required to connect a particular defendant with it."* *United States v. McGann,* 431 F.2d 1104, 1107 (5th Cir. 1970), *cert. denied,* 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 821 (1971) (emphasis in original). *Accord United States v. Prieto,* 505 F.2d 8, 11 (5th Cir. 1974); *United Stages v. Iacovetti,* 466 F.2d 1147, 1154 (5th Cir. 1972), *cert. denied,* 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973). Here, the parties stipulated that a conspiracy as charged in the indictment in fact existed. The government presented sufficient evidence from which the jury could reasonably conclude that Lawson partici-

pated in the conspiracy and in the substantive violation.

We have carefully considered all points raised on this appeal and find no reversible error.

Affirmed.

---

**3.** Asinof further testified that the morning after the call he contacted appellant's attorney, Herb Shafer, who verified that he had told appellant to contact Asinof.