UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose Demetrio ARTEAGA–LIMONES
and Mike Lozano Cantu,
Defendants-Appellants.

No. 75–1648.

United States Court of Appeals,
Fifth Circuit.

April 8, 1976.

Rehearing and Rehearing En Banc
Denied June 9, 1976.

Jake Jay Reich, San Antonio, Tex., Kenneth E. Houp, Jr., Austin, Tex., Arturo C. Gonzalez, Del Rio, Tex., for defendants-appellants.

John E. Clark, U. S. Atty., James W. Kerr, Jr., Asst. U. S. Atty., San Antonio, Tex., Mervyn Hamburg, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before COLEMAN, CLARK and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Jose Demetrio Arteaga-Limones (Arteaga) and Mike Lozano Cantu (Cantu) appeal from their convictions of drug-related offenses. Arteaga was convicted under 21 U.S.C. § 963, conspiracy to import marijuana; 21 U.S.C. §§ 952(a), 960(a)(1), illegal importation of marijuana; 21 U.S.C. § 846, conspiracy to possess marijuana with intent to distribute; and 21 U.S.C. § 841(a)(1), possession of marijuana with intent to distribute. He received a sentence of five years imprisonment and five years special parole on each count, to be served consecutively. Cantu was convicted of the two latter offenses and received a sentence of five years imprisonment and five years special parole on each count, to be served concurrently. Both defendants assert numerous claims of error. Arteaga's appeal was argued orally to the court; that of Cantu was submitted on briefs only.

## FACTS

In May 1974, during the trial of Julio Castillo-de la Garza (Castillo) on charges involving the illegal importation of a 300-pound shipment of hashish, evidence was developed that implicated Arteaga-Limones, Cantu and one Alvaro Moreno in the importation and distribution of 350 pounds of marijuana between January 1, 1973 and October 9, 1973. Castillo was convicted on the hashish charges and became the chief witness in the instant trial of Arteaga-Limones and Cantu. The following account of the events preceding and following the importation of the marijuana is primarily drawn from his testimony.

On or about January 30, 1973, Castillo and Arteaga travelled across the border to Ciudad Acuna, Mexico (the residence of Castillo), and carried back two sacks of marijuana. They stored the sacks at Arteaga's home in Del Rio, Texas, and later transported them to the San Antonio area and sold them to an unidentified purchaser. No money changed hands at the time of delivery, but Castillo later received several payments totaling approximately $60,000, which he

turned over to Arteaga. Castillo then met Moreno, a narcotics dealer, and discussed transporting marijuana for him. Around May 5, 1973, Arteaga and Castillo met at Arteaga's home and traveled to a small ranch near the Mexican border, where they observed two of Arteaga's employees arrive from the direction of Mexico with sacks of marijuana. Arteaga and Castillo stored the sacks at Arteaga's house. Later, when Moreno asked to buy some marijuana from Castillo, Castillo told him of the recent importation. Moreno requested a credit transaction. Castillo agreed, subject to Arteaga's approval. Arteaga agreed and implied that Cantu would make the delivery. The next morning, when Castillo met Cantu in a motel restaurant in San Marcos, Cantu told Castillo that part of the marijuana was in his car. Moreno came to the restaurant and left in Cantu's car. Arteaga arrived and reported that the rest of the marijuana was in another car parked nearby. Moreno returned to the restaurant and left in this car also. After two months passed without word or payment from Moreno, Castillo traveled to New York to see Moreno. Castillo received $800 and returned to Ciudad Acuna. About a month later Castillo and Arteaga received $11,500 from Moreno. None of the marijuana was recovered, since it had already entered the distribution network by the time Castillo's account came to light.

## CANTU

Cantu asserts claims of error relating to the sufficiency of evidence, the sufficiency of Count Four of the indictment and the admission of an extraneous offense.

■ 1. *Sufficiency of the evidence.* Cantu challenges the sufficiency of the evidence to support his conviction on Counts Three and Four, asserting that there was no evidence "other than hearsay" to establish the existence of a conspiracy or Cantu's connection with it, and no evidence of Cantu's possession of the marijuana with intent to distribute it. We begin by noting that Cantu received concurrent sentences for the violations; accordingly, if the proof be adequate as to either count, no reversible error is present. *Hirabayashi v. United States*, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1956); *United States v. Ransom*, 515 F.2d 885, 891 (5th Cir. 1975).

■ We approach the evidence with the responsibility to view it on appeal in the light most favorable to the government, as required by *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941). Accordingly, we have no difficulty finding sufficient evidence to support both the conspiracy and substantive charges. Castillo's account firmly establishes a basis for the existence of a conspiracy between himself, Arteaga and Moreno. Only slight evidence is required to link a defendant to a conspiracy once the fact of conspiracy has been established. *United States v. Lawson*, 523 F.2d 804, 807 (5th Cir. 1975); *United States v. McGann*, 431 F.2d 1104, 1107 (5th Cir. 1970), *cert. denied*, 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 821 (1971). We believe that a jury could reasonably find, from the testimony as to Cantu's involvement with Castillo, his provision of a hiding place for the marijuana and his service as a delivery courier, that he participated in the conspiracy as charged in Count Three. *See United States v. Sanchez*, 508 F.2d 388, 392–93 (5th Cir.), *cert. denied*, 423 U.S. 827, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975). The latter activity allegedly involving a transfer of marijuana at San Marcos, Texas, also provides a valid basis for a finding that Cantu possessed marijuana with intent to distribute it as charged in Count Four.

■ 2. *Sufficiency of Count Four of the indictment.* Both Arteaga and Cantu urge that Count Four of the indictment, charging actual violation of 21 U.S.C. § 841(a)(1), was fatally defective in that it failed to allege any location for

the commission of the offense.[1] They support their position with language from *United States v. Miranda*, 494 F.2d 783, 788 (5th Cir.), *cert. denied*, 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974), stating that "[f]ailure to specify the precise location of the offense is not fatal if the district is alleged." From this statement they infer an alternative rule that where the district is not alleged, the failure to specify the location of the offense is fatal to the indictment. We refuse to make this inferential interpretation. In *Miranda*, this court specifically noted that the validity of an indictment under Rule 7(c) is determined by practical, not technical, considerations. 494 F.2d at 788, citing *United States v. Miller*, 491 F.2d 638, 649 (5th Cir.), *cert. denied*, 419 U.S. 970, 95 S.Ct. 236, 42 L.Ed.2d 186 (1974). *Miranda* further held that the sufficiency of the indictment must be tested under the standard enunciated in *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). It cited as support for the statement on which Arteaga and Cantu rely *United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970). *Tomasetta* specifically repudiates the proposition that any single averment determines the sufficiency of the indictment[2] and states "[t]he failure to specify with greater precision the location of the alleged offense would surely not have given rise to this [reversal for insufficiency] [had] sufficient additional facts [been] averred." *Id.* at 980. The statement in *Miranda* was intended

as no more than a summary of the court's comparison between the *Miranda* and *Tomasetta* situations. The construction suggested by defendants would conflict with the law of all circuits that have faced this issued. *See United States v. Honneus*, 508 F.2d 566 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *United States v. Powell*, 498 F.2d 890 (9th Cir.), *cert. denied*, 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974); *Flores v. United States*, 338 F.2d 966 (10th Cir. 1964); 1 C. Wright, Federal Practice & Procedure § 125 (1969).[3] It would not advance the policies of the Federal Rules of Criminal Procedure applicable to indictments. *See* F.R.Crim.P. 7(c), 18.

 While the counts of an indictment must stand independently for the purpose of being judged as to sufficiency, they need not be read apart from the caption and heading of the indictment, which clearly state that the action is being brought in the Western District of Texas, Del Rio Division. Defendants had the right to be tried in the district and division where the offense was committed, not the right to be *told* they would be tried there. *See Carbo v. United States*, 314 F.2d 718 (9th Cir. 1963), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964). Where, as here, no allegation of a variance between charges and proof is made, and no other circumstance demonstrating that the defendant was in any way disadvantaged

---

1. Count Four read, in its entirety:

 COUNT FOUR
 (21 U.S.C. § 841(a)(1))

 That on or about May 16, 1973, the exact date unknown to the grand jurors, Defendants JOSE DEMETRIO ARTEAGA–LIMONES, ALVARO MORENO, MIKE LOZANO–CANTU, Julio Castillo-de la Garza, (the said Julio Castillo-de la Garza being named as a principal but not as a defendant herein) and other persons to the grand jurors unknown, knowingly and intentionally did possess with intent to distribute approximately 350 pounds of marijuana, a Schedule I controlled substance.

2. The repudiation appears twice:

 [A]rbitrary rules as to the necessity, in the abstract, of a given averment have no place

in the analysis, as the question is whether the indictment as a whole conveys sufficient information to properly identify the conduct relied upon by the grand jury in preferring the charge.

429 F.2d at 979.

 [In concluding that the indictment is insufficient] we stress that no one factor is determinative.

*Id.* at 980.

3. Professor Wright suggests that, in these circumstances, a bill of particulars should have been made available to the defendants upon request. *Id.* at 246. No such request appears in the record.

has been brought to light, we refuse to find error in the fact that each count of this indictment did not repeat the division and district in which the crime was charged to have been committed.

3. *Admissibility of an extraneous offense.* The government offered evidence of Cantu's 1974 narcotics conviction to establish intent and a general scheme or design:

"Q Mr. Castillo, on or about May 2nd, 1974 were you convicted of an offense in violation of Federal law?

"A Yes, sir, I was convicted of possession and with intent to distribute 301 pounds of hash. And I am presently awaiting sentence.

"Q And hashish is a type of marijuana, isn't it?

"A Yes, sir, it's a substance of marijuana.

\* \* \* \* \* \*

"Q All right, who else was convicted with you in that case?

"A In that *was* case was convicted Mike Lozano Cantu.

"Q All right. Looking around the courtroom today, do you see the person that you know of as Mike Lozano Cantu?

"A Yes, sir.

"Q Would you describe where he is in the courtroom and what he is wearing?

"A He's over here. He's wearing a yellow suit and brown with long hair and a brown shirt.

MR. KERR: "Your Honor, at this time I'll offer into evidence Government's Exhibit Number One.

THE COURT: "All right, any objection, Mr. Gonzalez?

MR. GONZALEZ: "Your Honor, we are going to object to that, if the Court please, because it's being offered prior to the taking of the stand by the Defendant. It serves no purpose whatsoever in this case.

THE COURT: "Well, are you taking the position that this conviction is not admissible?

MR. GONZALEZ: "We are taking the position that this Defendant was not tried with my client. It was an entirely separate hearing. They were not tried together. And I don't think that anything that might have happened to my client has any bearing in this particular case because it was a separate and distinct offense.

THE COURT: "Let me ask you this: I have forgotten because I've tried a good many of these cases, but were they tried together, Mr. Kerr?

MR. KERR: "Your Honor, Mr. Cantu pled guilty.

THE COURT: "That was my recollection. And you are merely introducing this particular judgment that I entered in this case as Government's Exhibit Number 1 to show that he did plead guilty to the offense charged?

MR. KERR: "Your Honor, I am showing a separate marijuana conviction as a similar act which goes to the issue of intent which is an element of this offense. I'm also showing a general scheme or design which is related to the same scheme or design in this case. Mr. Gonzalez is absolutely correct that it is a different case, but it is an identical offense.

THE COURT: "Well, in order to get it in, you have to establish that it is—while the Fifth Circuit Court of Appeals says similar, I think it almost means identical. I believe that it was testified that hash is a form of marijuana. Is that right, Mr. Castillo-de la Garza?

THE WITNESS: "Yes, it is marijuana.

THE COURT: "And this was a marijuana conviction. If there any doubt about that?

MR. GONZALEZ: "Yes, sir. In addition to that, sir, this is an offense which took place in October of 1973 while the Defendants are now on Trial for an offense that took place in 1972.

THE COURT: "You mean you are taking the position now that the plea of guilty to the charge involving mari-

juana is too remote? '73 is very recent.

MR. GONZALEZ: "I am taking the position that it is not admissible as original evidence. That it would be admissible for impeachment purposes.

THE COURT: "Oh, no. I'll overrule the objection. I'll receive it into evidence. Government's Exhibit Number 1 will be received in evidence."

The foundation laid for the introduction of Cantu's 1974 conviction established that, although it involved a different load of drugs, it resulted from the same conspiracy for which Cantu was on trial in this case and was closely connected in time with the events alleged here. *See United States v. Goodwin,* 492 F.2d 1141, 1152–53 (5th Cir. 1974); 2 J. Wigmore, Evidence § 304 at 202–03 (1940). Thus the prior conviction of Cantu was clearly admissible, as pointed out by the government at trial, to show a common design, scheme or plan. Here, evidence was admitted on an incorrect theory to establish criminal intent. *United States v. Miller,* 500 F.2d 751, 761–63 (5th Cir. 1974). But the evidence was properly receivable on another theory specified by counsel for the government to establish a common scheme or design. *United States v. Yaughn,* 493 F.2d 441 (5th Cir. 1974). Defense counsel asked only that the evidence be excluded. In this situation, we hold that the technical error of the trial court in apparently basing his ruling on the wrong ground did not result in prejudice to Cantu and does not require reversal. *See* C. McCormick, Evidence § 52 at 117 (Cleary Ed.1972).

Additionally, it is clear that Cantu failed to state a specific objection to the admissibility of the 1974 conviction. Cantu's objection was too loosely formulated and imprecise to apprise the court of the legal grounds for his complaint, and thus did not preserve error. *See*

*United States v. Fendley,* 522 F.2d 181, 185–86 (5th Cir. 1975).

## ARTEAGA

Arteaga asserts nine claims of error that are individually considered below.

1. *Sufficiency of the evidence.* The standard for review, irrespective of whether the evidence is direct or circumstantial, is whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the accused's innocence. *United States v. Ragano,* 520 F.2d 1191, 1203 n. 16 (5th Cir. 1975). The evidence adduced at trial clearly supports the jury's verdict of guilty.

2. *Jury argument.* During the government's closing argument, the prosecutor stated:

"Ladies and Gentlemen, for you to find the Defendants not guilty, you are going to have to disbelieve Mr. Castillo's statements and testimony, and you are going to have to believe that the Government would bring to you evidence of that nature knowing that it was not subject to being believed and that his veracity and credibility could not be believed. You are going to have to totally disregard all that Mr. Castillo has told you."

Arteaga did not interject an objection at trial to the government's argument. Nevertheless, for the first time on appeal, he argues that the prosecutor's remarks improperly vouched for the credibility of its primary witness Julio Castillo. Although we recognize that the government's arguments were improper and unprofessional,[4] the remark did not constitute plain error. Therefore, because defense counsel did not object at trial, error is not preserved for appellate review. *E. g., Fogarty v. United States,* 263 F.2d 201, 204 (5th Cir.), *cert. denied,* 360 U.S. 919, 79 S.Ct. 1437, 3 L.Ed.2d

---

4. *See Lawn v. United States,* 355 U.S. 339, 359 n. 15, 78 S.Ct. 311, 323, 2 L.Ed.2d 321, 335 (1957); *Hall v. United States,* 419 F.2d 582 (5th Cir. 1969); *United States v. Coppola,* 479 F.2d 1153, 1163 (10th Cir. 1973); *United States*

*v. Cummings,* 468 F.2d 274, 278 (9th Cir. 1972); *United States v. Handman,* 447 F.2d 853 (7th Cir. 1971); ABA, *Code of Professional Responsibility* DR 7–106(C)(3–4), EC 7–13.

1534 (1959). Furthermore, the trial court's repeated admonitions to the jury that nothing said during argument can be considered as evidence (R. 357, 365, 373, 374, 375, 379) dispelled any prejudice which might have arisen from the prosecutor's closing argument. *See, United States v. Davis,* 487 F.2d 112, 124–25 (5th Cir. 1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974); *United States v. Corbett,* 518 F.2d 113, 116 (8th Cir. 1975).

3. *Instructions on the credibility of a government witness.* During cross-examination Julio Castillo admitted that he perjured himself at an earlier trial "to get out of the charge":

> "Q And at that time [when you were being tried in Del Rio, Texas] he asked you this question: 'Okay, now did you testify under oath on March 4, 1974 in San Antonio?'
>
> "A Yes.
>
> "Q And your answer to that question was 'did I what?' And the following question was 'Did you testify in Court in San Antonio on March 4th?' And your answer to that was 'Yes. I said that I never deal with dope or nothing.' Is that correct, sir?
>
> "A Yes, sir."

> \* \* \* \* \* \*

> "A Well, I said that in Court because I was trying to hid. But now that I am—I have repented for what I did, you know. Now I'm telling the truth to everybody.
>
> "Q At that time you were not telling the truth, is that correct?
>
> "A No, sir, I was lying at that time.
>
> "Q Sir?
>
> "A I was lying at that time.
>
> "Q You were lying then, sir?
>
> "A Yes."

> \* \* \* \* \* \*

> "A Well, I said [that I worked as an undercover agent for the DEA in May 1973] in Court, you know, because all of the Special Agents, all of narc agents, they are all my friends. Since I got back from Mexico City, I was working in Las Alpes as the Manager over there and I met everybody, you know.
>
> THE COURT: "That isn't what he asked you. Did you testify under oath in the trial in which a Jury verdict was returned on May the 3rd, 1974, that you were working as an undercover Agent for the Mexican and the United States Government?
>
> THE WITNESS: "I'm not sure, you know. I'm not sure if I said it or not. But I didn't work with them.
>
> THE COURT: "All right, he admits he didn't work with them. He doesn't remember what his testimony was, but in other words, that was not true?
>
> THE WITNESS: "Right. I did not work for them.
>
> "Q (By Mr. Reich:) Then if that is within your record, then you were not telling the truth then, is that correct?
>
> "A No. I knew I was doing the wrong. I was doing wrong.
>
> "Q But if it's in the record that you testified that you were working for the federales and the Agents here in the United States, Drug Enforcement Agents, then you were lying then?
>
> "A Well maybe. I don't know. I don't know if I was lying. I don't remember.
>
> "Q I'll ask you whether or not you are telling the truth now or are you lying?
>
> "A Now I'm telling the truth.
>
> "Q Now you are telling the truth?
>
> "A Yes, sir."

The trial court instructed the jury, in pertinent part, as follows:

> "You are indeed the exclusive judges of the credibility, and credibility means and it is synonomous with believability of the witnesses and the weight to be given to the testimony of each witness who appeared before you."

> \* \* \* \* \* \*

"Now as exclusive judges of the credibility or believability of the witnesses, you must consider the testimony of all the witnesses who appeared in the case. In this connection, you can disregard all or any part of the testimony of a given witness and you can accept that portion of the witnesses testimony which you feel that you can and should believe, and you can reject all or any part of the remainder of the testimony which you feel is not plausible or worthy of your belief.

\* \* \* \* \* \*

"Now, there has also been evidence of accomplice testimony in this case, that is, Mr. Castillo-de la Garza, a witness in this case. Now, an accomplice is one who voluntarily and with common intent participates with another person in the commission or the planning of a criminal offense. Now, an accomplice does not become incompetent as a witness because of participation in the alleged criminal act charged. Quite to the contrary, the testimony of an accomplice alone if believed by the Jury may be sufficient and of sufficient weight to sustain a verdict of guilty as to any given Defendant even though not corroborated or supported by other testimony or other evidence. However, the Jury should keep in mind that the testimony of an alleged accomplice should be closely examined, received with caution and weighed with great care.

"On the other hand, if the Jury believes the testimony of an accomplice to be true beyond a reasonable doubt, that testimony is sufficient to convict a Defendant even though it is not corroborated by other witnesses testimony or other evidence. The Jury should not convict a defendant upon the unsupported, uncorroborated testimony however, of an accomplice unless it believes the unsupported testimony beyond a reasonable doubt."

Arteaga contends that the trial court's failure to caution the jury on the weight to be given testimony of an admitted perjurer constituted reversible error. Nevertheless, Arteaga neither requested a charge on the testimony of a perjurer nor objected to the trial court's failure to include such an instruction.

Rule 30 of the Federal Rules of Criminal Procedure provides that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." *See United States v. Rodriguez,* 498 F.2d 302, 307 (5th Cir. 1974). The purpose of this is to provide the trial court an opportunity to correct any error or omission in the charge before the jury begins its deliberations. If prompt objection is made, the error can then be corrected. Wright, 2 Federal Practice & Procedure §§ 484, 496 nn. 47–50 (1969).

Because Arteaga failed to request an instruction concerning the credibility of Castillo's testimony, the proper foundation was not laid to obtain a review of this alleged error. *Franano v. United States,* 310 F.2d 533 (8th Cir. 1962), *cert. denied,* 373 U.S. 940, 83 S.Ct. 1545, 10 L.Ed.2d 694 (1963); *Mims v. United States,* 254 F.2d 654 (9th Cir. 1958); *United States v. Muncy,* 526 F.2d 1261 (5th Cir. 1976).

4. *Due process and a "witness' failure of memory."* The indictment charged that the offenses occurred "on or about" certain specified days, "the exact date unknown to the grand jurors." From the outset the primary government witness acknowledged that he was unable to recall the exact dates during which the drug offenses occurred:

"A About a year-and-a-half ago I was looking for a connection to delve in narcotics in Mexico.

\* \* \* \* \* \*

"A I knew a man that was dealing in narcotics. I talked to him if he could introduce me with somebody

that would deal in narcotics. He told me he wasn't dealing in narcotics any more, that he was out. So he told me that he was going to meet me. He was going to introduce me to a man from Laredo, Mexico, Tamaulipas, Mexico. His name was Alvaro Moreno. That was about January or February, *I don't remember the exact date.* But they both came into my club, and Villarreal introduced me with him. And Moreno and me started talking. And I told him, you know, if I could help him on smuggling. He told me yes, because Villarreal is not working any more, in narcotics any more. He told me that he will be back in about a month.

\* \* \* \* \* \*

"A [Mr. Arteaga] said Mike Lozano Cantu will deliver the marijuana at the Holiday Inn around 10:00 o'clock in the morning.

"Q All right.

"A The next day, May the 16th.

"Q All right. Actually, Mr. Castillo—

THE COURT: "May the 16th of what year would that have been?

THE WITNESS: "1973."

Q (By Mr. Kerr): All right, we don't know that that's the exact date, do we?

5. The following is a brief excerpt from the lengthy attack on Castillo's failure to recall the exact dates relevant to the criminal transactions:

Q Now Mr. Castillo, it's alleged in the indictment, and we are talking about Count Two of the indictment, that on or about May 5, 1973, the exact date unknown to the Grand Jurors, in the Western District of Texas, the Defendant Joe Demetrio Arteaga-Limones and Julio Castillo-de la Garza . . it says nothing about Mr. Cantu?

A Right.

Q Was it on that date that the marijuana was brought across the river?

A Which date did you say?

Q May 5th, 1973.

A I'm not sure, but it was about those dates. I'm not pretty sure, but it was about those dates.

Q Well, would you say May the 1st, May 2nd, May 3rd, May 4th?

A Well no, I don't remember exactly, you know, if it was the exact date.

The evidence, however, clearly established that the offenses occurred before the return of the indictment and within the statute of limitations; accordingly, since the exact dates were not essential elements of the offenses, the inability of the government to prove the dates with precision was not fatal. *Russell v. United States,* 429 F.2d 237, 238 (5th Cir. 1970).

On appeal Arteaga claims that because his defense of alibi was dependent upon a showing that he was no where near the place where the offenses occurred on the dates alleged, he was prejudiced by the government's failure to prove the exact dates of the offenses charged. Nevertheless, the record does not support Arteaga's contention, for his counsel took full advantage of Castillo's failure of memory. Counsel for Arteaga and Cantu subjected Castillo to extensive cross-examination concerning his inability to recall the exact dates of the criminal episodes (R. 136–46, 161–63, 166–70, 178–84, 189–90).[5]

Arteaga presented testimony from three members of a Mexican law firm with whom he conferred in Guadalajara from May 1 to May 20, 1973. In closing argument counsel stressed Castillo's ina-

A May 5th, yes.

Q May 5th? 6th?

A Yeah, about those dates.

Q Would you say that you remember the date because May—

A It was about ten days before Alvaro visited me in the Macarena.

Q About ten days before?

A Yes.

Q The date that Alvaro visited you—

A Six days or eight days, I don't know. It was about a week.

Q The date that you say that Alvaro Moreno visited you at the Macarena was on May 16, 1973?

A No.

Q And May 15, 1973?

A Alvaro was one day before we went to San Marcos.—In there. He was there, you know.

bility to recall specific dates, arguing that the witness' failure of memory supported their contention that Castillo's account of the criminal transactions was a fabrication designed to secure leniency at the future sentencing procedure.

The court instructed the jury on matters of the presumption of innocence, the burden of proof and reasonable doubt, the defense of alibi, and the suspect nature of accomplice testimony. Additionally, placing the issue of the date of offense in its proper perspective, the court stated:

> "Now, you will note that the Indictment charges that the offense or the complaints or the charges were committed on or about a certain date. It is not necessary that the proof establish with certainty the exact dates of the alleged offense. It is sufficient if the evidence shows beyond a reasonable doubt that the offense or incident was committed on a date reasonably near or approximating the date alleged."

The jury, exercising its responsibility as the sole judge of facts and credibility, concluded that Castillo's account was believable notwithstanding his inability to remember the exact dates of the criminal enterprise.

In light of the trial court's careful admonitions and defense counsel's vigorous cross-examination of the government witness, we conclude that Arteaga was not prejudiced by Castillo's failure of memory. Appellant's claim is without merit.

■ 5. *Double jeopardy: one conspiracy or two?* Arteaga contends that the evidence here shows only one conspiracy, rather than two separately identifiable ones, and that his trial, conviction and consecutive sentencing on all counts violates the Double Jeopardy clause of the Fifth Amendment by imposing multiple punishments for the same offense. We find no merit in this claim. The objects of the two conspiracies were different (importation and distribution). The persons involved were different; for example, the evidence

links Cantu only to the "distribution" portion. Finally, the locales were different. Castillo's account alleged that the importation took place in the Del Rio area; the distribution *began* there, but the ultimate consumers of the marijuana were in New York. Yet Castillo's story does not portray a regular "Del Rio connection" in which a New York-based operation regularly dealt with Castillo, Arteaga and Cantu, but the largely fortuitous consummation of a transaction previously contemplated only in barest outline. Clearly Moreno was the intended customer, but it is equally clear that other arrangements could and would have been made had Moreno's hoped-for purchase not materialized. Thus two distinguishable conspiracies may ·be charged, prosecuted and punished when the jury so chooses to interpret the evidence. *See American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946).

■ 6. *Destruction of the presumption of innocence.* Arteaga complains that the trial court denied him a fair trial by interjecting references to his incarceration. During direct examination of defense witness Richard Rios, chief jailer at the Val Verde County Jail, Arteaga's counsel elicited the following testimony:

Q How long have you been Chief Jailer in the Val Verde County Jail?

A A little over a year.

Q Are you the custodian of records over there and have access to the records?

A Yes, sir.

Q I'll ask you as a result of my request did you bring over a record of Jose Demetrio Arteaga?

A Yes, sir.

Q Do you have that with you?

A Yes, sir.

Q Would you please refer to that. Is this the official record as to when Mr. Jose Demetrio Arteaga entered the Val Verde County Jail?

A Yes, sir, it is.

Q Would you please recite the date?

A 8–23–74.

\* \* \* \* \* \*

Q (By Mr. Reich); Now, has he been confined within the Val Verde County Jail all of this time?

A Yes, sir.

Q Is this the record as to when an indictment was returned against him or is this the record when he first came in to the County Jail?

A This is when he first came in to the County Jail.

\* \* \* \* \* \*

Q (By Mr. Reich): Now, do you have all of the records of when Mr. Jose—Mr. Jose has not been out of Jail at any time for any particular reason as far as being let out on bond or otherwise from the date that he first entered the Jail on this offense which he is charged with?

A No, sir, he hasn't.

Q Well, you are certain that he wasn't there before then? As a matter of fact, if you will look on your records you will find July 16, 1974.

MR. KERR: Your Honor, Mr. Reich is impeaching his own witness.

THE COURT: I believe you are.

MR. REICH: I just want to find his records is all, Your Honor. The record should speak for itself.

THE COURT: Well, I would think so. Mr. Kerr, is there any doubt about this?

MR. KERR: Your Honor, I don't know because he's not in jail under a Federal charge. He is suggesting to this witness that Mr. Arteaga has been in Jail since July or August in connection with the Federal charge. He is a State prisoner. He is in Court today on the basis of a writ issued to the Sheriff. He is a State prisoner and he is not in Federal Custody and has not been in Federal custody since he was placed in jail.

THE COURT: I don't think he's a Federal prisoner over there, is he? Why is this important?

MR. REICH: Well, I just want to show how long the man has been in the Jail and also as to when Mr. Julio Castillo-de la Garza entered the Jail.

THE COURT: You mean how long he has been on the State charges?

MR. REICH: No, in Jail, straight through from the date he first got in Jail on the State charge and when the warrant was issued out on the Federal Charge.

THE COURT: Well, I'm sure this is interesting, Mr. Reich, but why is it relevant? What is the materiality of it?

MR. REICH: We will just skip that and we will go into the point as to Mr. Julio Castillo-de la Garza.

References to Arteaga's pre-trial confinement were invited by appellant himself. Additionally, because Arteaga failed to object at trial, error is not preserved for appellate review. *See United States v. Cochran*, 499 F.2d 380 (5th Cir. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975).

Evidence of a similar nature was elicited during the government's direct examination of Julio Castillo:

Q Mr. Castillo, on December 18, 1974 did you have a conversation with Mr. Arteaga?

A December the what, sir?

Q 18th, 1974. Just this last month.

A Yes, sir.

Q All right. Where was that conversation?

A In jail.

Q All right, where?

A Right here in the Del Rio County Jail.

Q All right, was anyone else present during that conversation?

A He was alone and Alfredo the Jailer was outside.

No objection was made by Arteaga or Cantu. Therefore, the objectionable

statement was at most cumulative of other evidence placed before the jury without objection. *See United States v. McKinley,* 493 F.2d 547, 552 (5th Cir. 1974).

7. *Evidence of a prior conviction.* Arteaga complains that the trial court erroneously admitted evidence of a 1961 conviction for "smuggling marijuana."[6] The record reflects the following testimony relating to Arteaga's claim:

(At the Bench)

MR. REICH: Mr. Kerr has shown me a couple of exhibits which he intends to introduce through this witness. This witness has not taken the stand. A prior conviction cannot be used against him. If he does not take the stand, the Jury would have to be told not to consider anything pertaining to his record.

THE COURT: I happen to know the law. Here is my case, the United States versus Robert Fonseca. 'Only prior misconduct or prior criminal activity, whether involving a connection or not, can only be introduced for the limitated purpose of showing intent or knowledge.'

MR. KERR: Your Honor, it can also show—

THE COURT: 'Proof asserting a similar offense to establish necessary intent, the other offense proved must exclude the essential elements of the offense charged by competent evidence.'

All right. Now, my next case, *United States v. Sanchez* was also in my Court. 'It sustains any holding. In order to prove intent or guilty knowledge, other offenses offered and testified to must be similar.'

MR. KERR: This is offered to show it is an identical offense. They went up on Robinson and it was affirmed by the Fifth Circuit.

MR. REICH: The fact is that this man hasn't taken the stand and

doesn't intend to take the stand. And if in the event this is brought up, of course it will be detrimental to him.

THE COURT: Make your objection, and I will give the usual and standard instruction to the Jury. It can only be done for the limited purposes I have stated here. There is no question about it. I'll give you the cases. Fonseca is the latest case.

MR. REICH: I can find cases too, Your Honor.

THE COURT: In the cases decided by my overseers in New Orleans, I have to give the instruction. When you make an objection, I will have to limit it.

\* \* \* \* \* \*

(In the presence of the jury)

Q And in 1961, did you have an occasion to meet an individual who has been identified to you as Jose Demetrio Arteaga?

A Yes, sir, I knew him.

Q All right, looking around the courtroom today, do you see that individual?

A He is seated at counsel table directly behind you on the corner at the back of the table.

MR. KERR: Your Honor, may the record reflect the Defendant has been identified.

THE COURT: Yes, the record will reflect the witness has identified the Defendant.

MR. KERR: May I approach the witness, Your Honor?

THE COURT: Yes, you may.

Q (By Mr. Kerr): Mr. Killman, I have handled to you what's been marked as Government's Exhibit Number 3. It lists the names of three individuals, one of whom is Jose Demetrio Arteaga.

A Yes sir.

---

**6.** The 1961 conviction was obtained under 21 U.S.C. § 176a, since repealed. The elements of the 1961 offense are very similar to those required for a conspiracy conviction under present 21 U.S.C. §§ 963 and 952(a), as charged in Count One of the case *sub judice.*

MR. REICH: May it please your Honor, at this time we wish to offer our objection to any prior conviction or anything that has to do with any other matter other than this matter before the Court at this time.

THE COURT: All right. Now, what was the date of the alleged offense?

MR. KERR: 1961.

THE COURT: All right, what was the offense charged?

MR. KERR: Smuggling marijuana.

THE COURT: Was there a conviction?

MR. KERR: Yes, Your Honor.

THE COURT: All right, that's an identical offense. Members of the Jury, in order for you to consider prior or other similar convictions of this Defendant, Mr. Arteaga, for the same type or similar type of offense for which he is presently charged, you may consider it only for the limited purpose of showing knowledge or intent and for no other purpose. You are instructed that the fact that the accused may have committed an offense at some time is not any evidence or proof whatsoever that at a later date Mr. Arteaga committed the alleged offense or offenses, if any, charged in this particular case, this particular indictment, even though both offenses are of a similar or like nature.

If the Jury should find beyond a reasonable doubt from the other evidence in the case that the accused did the act or acts charged in this indictment, then the Jury may consider evidence of a prior or similar offense of a like nature in determining the state of mind or intent with which the accused did the act or acts charged in this Indictment, if any, and for no other purpose. It is limited to that.

MR. REICH: Note our exception, Your Honor, to the ruling of the Court.

■ The propriety of admitting evidence of prior convictions to show intent is established by showing four factors: (1) plain, clear and convincing evidence of a prior similar offense; (2) not too remote in time; (3) in which intent is a material element; and (4) the proof of which is substantially needed by the government to the extent that material prejudice to the defendant is outweighed. *United States v. Urdiales*, 523 F.2d 1245, 1247 (5th Cir. 1975).

In this case the first and third prerequisites have been satisfied. The convictions were introduced by way of documentary evidence from court records and verified by oral testimony from government witness William D. Killman, a former customs agent stationed in Del Rio. Furthermore, it is clear from the language of the statutes that intent is a material element in this case. The use of Arteaga's twelve year old conviction, however, raises serious questions.

■ The prior crime, while elementally nearly identical to the charges in this case, was committed *twelve* years before the activity charged to be criminal here. We adhere to our position in *United States v. San Martin*, 505 F.2d 918, 922–23 (5th Cir. 1974):

The test for remoteness need not, and indeed cannot, be a simple rule of thumb based solely on the number of years that have elapsed between the prior crime and the present offense charged. The better test . . . is whether the prior crime is similar in nature and in its material elements to have clearly probative value with respect to the intent of the accused *at the time of the offense charged.*

Under the facts of this case, we conclude that evidence of Arteaga's 1961 conviction was too remote to possess probative value.

Also, the fourth element—the need for the proof as weighed against the prejudice to the defendant—was not satisfied in the instant case. In *United States v. Miller*, 500 F.2d 751 (5th Cir. 1974), this court wrote:

Even if we were to assume that the prior conviction had some probative value in the present case, the government has done little to show any actual need for that evidence in view of other available evidence. Terry Lee Smith, the alleged co-conspirator, testi-

fied that McDuffie helped weld the still pots, helped mix the mash for fermentation, paid Smith for work at the still, and furnished a condenser, a still cap, wheat shorts, and plastic containers to Smith to be carried to the Macon area. If the jury believed that McDuffie actually performed these acts, they logically would infer from that conduct that he possessed the requisite criminal intent. *See Fallen v. United States*, 5th Cir. 1955, 220 F.2d 946, 948, cert. denied, 350 U.S. 924, 76 S.Ct. 213, 100 L.Ed. 808.

An almost identical situation is presented in the instant case. The alleged co-conspirator Castillo gave a compendious account of the smuggling operation, including approximate dates, places, participants and details of the operation, in much the same way the witness Smith did in *Miller*. The linchpin of the government's case against Arteaga and Cantu was Castillo's testimony, without which there is no evidence that any marijuana was ever smuggled at all.

■■■ As was the case in *Miller*, it is highly unlikely that the jury would choose to believe the principal witness' testimony as to the existence of the contraband or the physical facts of the illegal activity but find that the acts were performed unknowingly or unintentionally. Arteaga did not limit his challenge to the *mens rea*; rather, he attacked the whole account. In such cases, the danger of convicting defendants for their evil character instead of their evil acts remains great. Where, as here, the evidence is not reasonably susceptible of the interpretation that the acts alleged to constitute the crime were innocently performed and no defense is presented which may properly be rebutted by the introduction of the prior conviction, the intent exception to the rule against admitting prior convictions is not available to the prosecution. *See United States v. Miller, supra*; *United States v. Dryden*, 423 F.2d 1175, 1178 (5th Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1869, 26 L.Ed.2d 290 (1970); *United States v. Klein*, 340 F.2d 547, 549 (2d Cir. 1965). Nevertheless, *United States v. Fendley*, 522 F.2d 181, 185–86 (5th Cir. 1975), pre-

cludes our review of appellant's claim. In *Fendley* defense counsel objected to the admission of business records because, among other things, the proffered evidence violated the general rule against hearsay. The court held that the objection was inadequate to preserve error:

It appears to us that this loosely formulated and imprecise objection at most comes to this: (1) that the document was hearsay; (2) that the witness laying the foundation for its introduction was someone other than the preparer; and (3) that the witness laying the foundation was unable to personally attest to the accuracy of the figures contained in the document. There was no objection on the only grounds which would have permitted the trial court to have required that a fuller foundation be laid for the admission of the exhibit—that the printout was made and kept in the regular course of business, for regular business purposes and relied upon by the business, and finally that it was not "mere accumulations of hearsay or uninformed opinion." *United States v. Miller, supra*, 500 F.2d at 754.

The grounds asserted in the defendant's objection are clearly insubstantial. While, obviously, the document was hearsay, this in itself fails to state an objection as to whether the exhibit met the admissibility requirements of the Business Records Act.

\* \* \* \* \* \*

The defendant now on appeal raises new grounds as a basis for objecting to the admissibility of Exhibit 9–108. In our view the defendant is foreclosed from making these objections at this time, as he failed to comply with the requirements of Rule 51, Federal Rules of Criminal Procedure, that he make "known to the [trial] court the action which he desires the court to take or his objection to the action of the court and the grounds therefor." Clearly if the defendant fails to object to the admission of evidence, objection is normally waived, *United States v. Maddox*, 492 F.2d 104 (5th Cir. 1974) unless the admission of such evidence is such clear error that it affects sub-

stantial rights. *See United States v. Davis*, 496 F.2d 1026 (5th Cir. 1974); *Sykes v. United States*, 373 F.2d 607 (5th Cir. 1966). Here, although the defendant objected in general terms on the three grounds of hearsay authorship and accuracy, he failed to object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection—if in fact he wished to object to the lack of a proper foundation under the business records statute. *United States v. Bryant*, 480 F.2d 785, 792 (2d Cir. 1973).

522 F.2d 181, 185–86.

Likewise, in *Arteaga*, appellant's objection was "too loosely formulated and imprecise" to apprise the trial court of the legal grounds for his complaint. Because *Arteaga* did not specify the legal theory on which he now relies—(1) too remote to possess probative value and (2) prejudice to the defendant outweighs the need for proof—error is not preserved for appellate review.

 Additionally, several recent cases have held that the improper admission of an extraneous offense can constitute harmless error. *E. g.*, *Swanson v. Estelle*, 523 F.2d 1250 (5th Cir. 1975); *Thomas v. Savage*, 513 F.2d 536 (5th Cir. 1975).

In this case Arteaga made several incriminating remarks to Justice of the Peace Roger Cerny:

(Direct examination by the government)

Q Did Mr. Arteaga make any statement to you concerning the smuggling of marijuana?

A Yes, sir, he did.

Q Now, as best you can recall what did Mr. Arteaga state to you concerning his having smuggled marijuana?

A He said that he had smuggled marijuana into this country.

---

**7.** Count Two read, in its entirety:

COUNT TWO
(21 U.S.C. § 960(a)(1) & 952(a))
On or about May 5, 1973, the exact date unknown to the grand jurors, in the Western

---

Q All right, and did he make any statement concerning his knowledge as to where to smuggle marijuana?

A Yes, sir. He said that he knew every crossing point on the Texas Mexican Border.

\* \* \* \* \* \*

(Cross examination by counsel for Arteaga)

Q All right. Now Mr. Cerny, you did recall the 27th. You stated nothing on the 16th, you are positive of that?

A Counselor, on the 16th day of May 1974 in my office in Del Rio, Texas, 209 East Losoya, between the hours of 1:15 P.M. and 2:00 P.M., Mr. Arteaga told me during the course of the conversation with you present that he had smuggled marijuana and that he knew every crossing point on the Texas-Mexican Border. And this occurred on May 16, 1974.

Under the particular facts of this case, error pertaining to the admission of the 1961 conviction, if preserved, was harmless.

8. *Sufficiency of Count Four of the indictment.* Like appellant Cantu, Arteaga contends that Count Four of the indictment is fatally defective because it fails to allege any location for the commission of the offense. For reasons stated above, we conclude that Arteaga's claim is without merit.

 9. *Sufficiency of Count Two of the indictment.* Arteaga argues that Count Two [7] was fatally defective in failing to include "knowingly or intentionally" in its language. We disagree. An indictment is defective if it fails to allege scienter elements expressly contained in the pertinent statute. *See, e. g., Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). But the elements need not be alleged in terms, and a pleading is good if it fairly imports knowledge or intent. 1 C. Wright, Federal Practice & Procedure § 125 at 243–44 (1969).

District of Texas, Defendant JOSE DEMETRIO ARTEAGA–LIMONES and Julio Castillo–de la Garza, (the said Julio Castillo–de la Garza being named as a principal but not as a defendant herein), imported and caused

Here, the language used was accompanied by specification of the statutory section numbers. The jury was charged that they must find knowledge or intent in order to convict. The indictment's adequate apprisal of the offense charged and the trial court's instruction concerning the need for evidence of scienter, prevented any injustice to Arteaga. *See Gearing v. United States,* 432 F.2d 1038 (5th Cir. 1970), *cert. denied,* 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971); *Glenn v. United States,* 303 F.2d 536, 538–39 (5th Cir. 1962), *cert. denied,* 372 U.S. 920, 83 S.Ct. 734, 9 L.Ed.2d 725 (1963); *Tallman v. United States,* 465 F.2d 282 (7th Cir. 1972); *United States v. Mixon,* 374 F.2d 20 (6th Cir. 1967).

## CONCLUSION

For the reasons stated, the convictions and sentences imposed are AFFIRMED.

CLARK, Circuit Judge, concurring in part and dissenting in part.

I concur in the affirmance of Cantu's conviction and in the portions of the majority opinion which reason to that conclusion. However, because I believe that in the circumstances of this case sufficient objection was made to the introduction of Arteaga's 1961 conviction at the trial below and that its introduction was not harmless error, I must dissent from affirmance of his conviction. Accordingly, I express no opinion on the other issues raised by Arteaga and reached by the majority.

The majority concedes that two of the four prerequisites for admissibility of a prior offense—nonremoteness and need for the evidence outweighing its potential for prejudice—are absent in the case at bar. *See* majority opinion at 1198–1199; *United States v. Urdiales,* 523 F.2d 1245 (5th Cir. 1975); *United States v. Miller,* 500 F.2d 751 (5th Cir. 1974). However, *United States v. Fendley,* 522 F.2d 181, 185–86 (5th Cir. 1975), is said to "preclude our review of appellant's

claim" because Arteaga's counsel, like Fendley's, failed to make known the grounds of his objection as required by Fed.R.Civ.P. 51. I do not believe, however, that *Fendley* either articulates a legal rule or describes a situation so substantially identical to the facts before us that we are bound by that decision.[1]

Rule 51 analysis must proceed on a case-by-case basis. The language required to "make known" the ground for the action desired by counsel necessarily will vary with the facts and arguments presented to the court preceding the objection in question. Our cases and those of other circuits reject the proposition that counsel must always articulate objections in any fixed or certain style. *See Jackson v. United States,* 250 F.2d 897 (5th Cir. 1958); *United States v. Semensohn,* 421 F.2d 1206, 1209 (2d Cir. 1972); *cf. United States v. Indiviglio,* 352 F.2d 276 (2d Cir. 1965) (en banc), *cert. denied,* 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). The question in each case must be whether the objection expressed its ground or grounds with *sufficient* specificity to focus the trial judge's attention on the legal issue involved. In the situation before us, four features not present in *Fendley* or any other case cited by the majority convince me that defense counsel's position was adequately expressed.

Fendley's counsel objected on the ground of hearsay. Of all rules of evidence, hearsay is the most riddled by exception—including the Business Records Act upon which the Government relied in *Fendley.* He objected on grounds which were not merely imprecise, but clearly *incorrect* under the Business Records Act. The objection was the same as meritless objections to several preceding exhibits. Finally, *Fendley* contains no indication that the trial court cut into or dominated the discussion on the objection.

to be imported approximately 350 pounds of marijuana, a Schedule I controlled substance.

1. To be responsive to the majority's view, the discussion of the sufficiency of Arteaga's objection assumes that he had the responsibility to justify the exclusion of the prior conviction

rather than that, upon objection, the Government was required to respond to his objection with a proper authentication of the evidence. In fact, the latter is clearly required. *See United States v. Miller, supra,* 500 F.2d at 761–62 and n.14.

By contrast, counsel for Arteaga did timely object to the introduction of the conviction on the basis of the general rule against admission of evidence of this type, a meritorious objection, as the majority notes. Second, the trial court itself before admitting Arteaga's prior conviction inquired of government counsel as to its date and received the answer "1961." Third, earlier in the trial, at the time of the introduction of Cantu's conviction, the only other time an instance of this type arose during the trial, the trial court itself had asked of Cantu's counsel whether he was objecting on the ground of remoteness. Finally, the trial court conducted the inquiry into the admissibility of the conviction in such a fashion as to limit severely the amount of discussion by counsel on both sides, to a degree that brings this case perilously close to classification as a "no-opportunity" case. *See, e. g., United States v. Huffman*, 467 F.2d 189 (6th Cir. 1972). In these circumstances, I cannot concur in an affirmance of Arteaga's conviction on the grounds that his objection to the unnecessary use of a 1961 conviction lacked specificity.

Trial judges must understand objections to expedite their rulings. Arteaga's counsel should have made a clear, precise objection by itemizing the criteria articulated in *Miller* and *Urdiales, supra*, and missing from the prosecution's argument below. But it seems plain to me that even in the absence of such clarity and precision, the trial court received from the combination of defense objections and its own requests sufficient information to have made the proper ruling as to admissibility of a conviction of this vintage. Therefore, I would adopt the functional approach of the Eighth Circuit in *United States v. Williams*, 484 F.2d 428 (8th Cir. 1973), which asks what the objection, considered in context, reasonably conveyed to the court and what prejudice the ruling carried for the defendant. Such a test does not stop at the literal words used by counsel.

Moreover, I cannot agree with the majority that the error was harmless beyond a reasonable doubt under *Kottea-kos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The testimony of Justice of the Peace Cerny may provide some link between Castillo's story and Arteaga, but it lacks the tangibility or the authority of a prior conviction. The introduction of the conviction well may have stilled doubts about the credibility of Castillo's account of Arteaga's involvement in the minds of one or more jurors, since an account, specific or general, of a smuggling operation that may sound like the product of a fertile imagination when told about a defendant with no apparent history of crime may acquire an aura of truth if the actor is shown to have a record of prior criminal conviction. Then too, while the jury was informed that Arteaga had been convicted of a similar offense, they were not told that since 1964 he had not been in custody. If a prior conviction can be both relevant and necessary and at the same time harmless, it seems to me that at least the jury should have been told that Arteaga had "served his time" and been back in society for nine years to still reasonable doubts that the use of the conviction was harmful to Arteaga's defense. In these circumstances, I cannot say with assurance that Arteaga was convicted because the government proved beyond a reasonable doubt he committed the acts presently charged. I maintain it is likely that he was convicted because he was shown to have been convicted for a similar offense at a time too remote to have had any legal probity for the issues presented below.

I, therefore, respectfully dissent from the affirmance of Arteaga's conviction.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing on behalf of Jose Demetrio Arteaga-Limones is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc,

(Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is DENIED.

CLARK, Circuit Judge (dissenting):

For the reasons stated in my dissent to the panel opinion, I would grant the petition for rehearing.