**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Erasmo CORONA, Defendant-Appellant.**

**No. 76–3540.**

United States Court of Appeals, Fifth Circuit.

May 16, 1977.

Robert R. Harris, El Paso, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., San Antonio, Tex., Frank B. Walker, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before GOLDBERG and TJOFLAT, Circuit Judges, and WYATT,* District Judge.

TJOFLAT, Circuit Judge:

The appellant, Corona, was indicted on the charges of conspiracy to possess a controlled substance, possession of marijuana and two counts of using a communication facility to commit those crimes.[1] He pled not guilty and requested a jury trial. Although three of his co-conspirators were also indicted, he went to trial alone since they all pled guilty. At trial the case against Corona was primarily constructed by one of his partners in crime, Ortega, who took the stand and testified adversely to Corona. It was disclosed at that time that Ortega had a long criminal record and had pled guilty to a misdemeanor in connection with the events of the present case. Another co-defendant, Uribe, was mentioned in testimony but did not appear as a witness. The jury found Corona guilty of all counts and he was sentenced to a total of ten years imprisonment with a special parole term to follow.

On this appeal, Corona asserts that the prosecutor's closing argument was so prejudicial as to deny him a fair trial. Even a

---

* Senior District Judge of the Southern District of New York, sitting by designation.

1. These were offenses under 21 U.S.C. §§ 841(a)(1), 846 and 843(b) (1970).

cursory examination of the transcript discloses that Corona's complaint is well taken. The prosecutor, apparently in a superabundance of zeal to attain a conviction, lost sight of his responsibility to insure that the defendant be afforded a fair hearing based only on the evidence properly presented to the jury at trial. We reverse.

## I

 The test to be applied in cases such as these is well settled: Does the prosecutor's argument, taken as a whole in the context of the entire case, prejudicially affect substantial rights of the defendant? *See Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Rodriguez,* 503 F.2d 1370 (5th Cir. 1974); *United States v. Rhoden,* 453 F.2d 598 (5th Cir. 1972). A review of the closing argument of the Government convinces us that substantial rights of the defendant were grossly prejudiced. Several misstatements by the prosecutor deserve special note.

(1) During the course of his argument, the prosecutor mentioned co-conspirator Uribe, "who is a co-Defendant, pled guilty, and has been sentenced."[2] Uribe, however, did not appear as a witness in the trial and no evidence was properly admitted as to the fact that she had pled guilty. It should be noted, though, that the prosecutor in his opening statement at the commencement of the trial stated that "[Mr. Corona]'s charged alone now, because the other two people that were involved at this point have already pled guilty and have been disposed of." Record at 6.

 Needless to say, the prejudicial effect of such statements is great indeed. We have elaborated on this point recently in *United States v. Hansen,* 544 F.2d 778 (5th Cir. 1977). There, as here, the appellant was tried separately after his co-defendants had pled guilty. In *Hansen* it was the trial judge who then gratuitously in-

formed the jury that the co-defendants had confessed their guilt. We reversed. As explained by Chief Judge Brown,

> [Appellant's] co-defendant pleaded guilty before the trial commenced. . . . Nowhere in the record was there any evidence that the co-defendant had pleaded guilty. Indeed, [the co-defendant] never testified during [appellant's] trial. We think this is a bad practice which ought not, and must not, be followed. . . . [T]here is no need to advise the jury or its prospective members that some one not in court, not on trial, and not to be tried, has pleaded guilty. The prejudice to the remaining parties who are charged with complicity in the acts of the self-confessed guilty participant is obvious. *Id.* at 780.

In our view, the prejudice is not lessened to any significant degree by the fact that the prosecutor, rather than the trial judge, disclosed the damaging information.

(2) The prosecuting attorney also made remarks during oral argument which were intended to bolster the testimony of the Government witnesses. Several undercover agents of the Drug Enforcement Agency testified at trial, and as to them the prosecutor remarked that they

> did the best they could under the circumstances. . . . [T]hose agents are human beings, and they're doing a dirty, nasty job, and they're associating daily with dirty, nasty people, because I, for one, consider dope dealers and dope traffickers as dirty, nasty people. And I think you should consider them the same way. Record at 269.

As to the remaining Government witness, co-defendant Ortega, the prosecutor offered the following assessments:

> The [agents are] handling garbage, ladies and gentlemen, and there's an old saying, "When you handle garbage, your hands are going to stink." And we have to use people like Ortega. I'm not proud of him.

---

**2.** Record at 249. No objection to this statement was made by the defense attorney. Neither was there an objection to the comments quoted in the text in subparts (2) and (4).

Objection was made to that quoted in subpart (3). As our analysis *infra* implies, the comments and the trial judge's treatment thereof constituted plain error.

I'm kind of proud of him. He finally had the guts to tell the truth and try and help us to get at the sources of supply in this case. But his activities, I don't condone. His record I don't condone. *Id.* at 275.

■ It should be abundantly clear by now that "[i]t is impermissible for the prosecutor to assert his own credibility as a basis for conviction." *United States v. Herrera,* 531 F.2d 788, 790 (5th Cir. 1976). *See also United States v. Serrano,* 496 F.2d 81 (5th Cir. 1974) (plain error). In *United States v. Brown,* 451 F.2d 1231 (5th Cir. 1971), the court reversed a conviction because the prosecutor remarked in closing argument that he thought an agent/witness did "a real good job" and "was doing his duty to his country." The court spoke in strong words which, unfortunately, we must repeat here:

As we have stated above the government concedes that it was error for counsel to vouch for this government witness. However, it is contended by the United States that this was harmless error and it should be overlooked. This court has passed too many times on this kind of comment by prosecutors to permit it to continue by allowing it to be brushed under the rug under the harmless error doctrine. See *Gradsky v. United States,* 5 Cir., 373 F.2d 706; *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 231; *McMillian v. United States,* 363 F.2d 165 (5th Cir. 1966); *Dunn v. United States,* 307 F.2d 883 (5th Cir. 1962) and *Steele v. United States,* 222 F.2d 628 (5th Cir. 1955). *Id.* at 1236.

(3) The prosecutor made other improper comments concerning intermittent conferences between Corona and his lawyer during the cross-examination of Ortega but out of the hearing of the jury. The relevant passage is as follows:

[PROSECUTOR]: It's been a smoke screen. But a very interesting one, because again, when they were cross-examining Ortega, he kept saying, "All right. Didn't you know this guy that got ripped off on a heroin deal? Didn't you know these other people?" I presume also nar-cotic traffickers. But just stop and think about what Counsel did. Each time that he needed one of those names of those narcotic traffickers, because he didn't remember them, where did he get these names? He walked right over to Mr. Corona right here in front of you and got the names.

[DEFENSE ATTORNEY]: Your Honor—

[PROSECUTOR]: Now how is this important innocent victim—

[DEFENSE ATTORNEY]: I believe that there was no names ever obtained from Mr. Corona.

[THE COURT]: Well, ladies and gentlemen of the jury, you will recall the actions of Counsel and the questions of Counsel, and I will allow you to decide that yourself. All right, you may proceed.

[PROSECUTOR]: Ladies and gentlemen, you saw it. You decide whether or not he went over there and asked him about those names. And if this poor innocent victim of circumstances didn't supply the names, they had to come from out of the air somewhere. Record at 271–72.

Thus, over objection, the prosecutor was allowed to urge guilt by association. He encouraged the jury to find that various persons mentioned during the course of Ortega's cross-examination were drug traffickers and acquaintances of the defendant. These inferences were wholly unsupported by the record. It is true that on three separate occasions during the rather lengthy cross-examination of the Government's chief witness, Corona's counsel asked permission of the court to consult with his client. These consultations all occurred *after* counsel had asked Ortega if he knew a certain individual, however, not before. After the brief conferences, which of course were not transcribed, counsel began questioning the witness about a different subject altogether. These individuals were never identified as drug traffickers. In sum, the prosecutor misled the jury as to the conclusions it could properly draw from the evidence.

In *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the Supreme Court struck down a conviction when the prosecuting attorney's argument to the jury "was undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury." *Id.* at 85, 55 S.Ct. at 633. The Court warned that "improper suggestions, insinuations and especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Id.* at 88, 55 S.Ct. at 633.

 It is apparent to us that the remarks of the prosecutor in this case were even more prejudicial than those decried in *Berger.* In *Berger* the example selected for reproach was when the prosecutor added to the evidence by claiming that a particular witness knew the defendant. Here the prosecutor was allowed to claim that the defendant was giving out names of drug traffickers to his attorney during the course of the trial. Yet, there was no evidence to show either that names were given or that those mentioned were involved in illegal activity of any sort. Hence, this closing argument clearly qualifies, in the words of Justice Sutherland, as "undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury." *Id.* at 85, 55 S.Ct. at 633.[3]

(4) The prosecutor concluded with a flourish: "It will be your verdict, ladies and gentlemen. It will be one that you must live with. It will be your responsibility. But I wish it was mine." This court was confronted with this identical, "I wish it was mine" type of argument in *United States v. Dawson,* 486 F.2d 1326 (5th Cir. 1973). In fact, it was made by the same prosecutor. In *Dawson* Judge Thornberry carefully explained that his comment, "while not to be applauded, will be tolerated, since the insinuation of guilt was based solely on the evidence introduced and since the jury was not led to believe that other, available evidence justified that belief." *Id.* at 1331.

Despite the clear warning in *Dawson* of the questionable propriety of such an argument, this prosecutor is apparently bent on continuing its use. In this case, however, its use cannot be tolerated. Unlike *Dawson,* the prosecutor based his insinuation of guilt not just upon the evidence introduced, but also on that improperly injected by himself, as we have already explained.

The American Bar Association standards governing jury argument are as follows:

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

**3.** It is true that the trial court in its instructions to the jury noted that the "statements and arguments of Counsel . . . are not evidence and must not be considered by you as such." Supplemental Record at 3. This instruction does not suffice to cure the evil in a situation such as this. In the first place, an objection was lodged by the defense attorney. It was well taken, and the trial court should have forbade further comments on the subject and instructed the jury to disregard the prejudicial comments of the prosecutor.

Secondly, in some cases rather drastic action is required by the trial court, and we deem this to be a case where such action would have been appropriate. As stated in *Berger,*

It is impossible, however, without reading the testimony at some length, and thereby obtaining a knowledge of the setting in which the objectionable matter occurred, to appreciate fully the extent of the misconduct. The trial judge, it is true, sustained objections to some of the questions, insinuations and misstatements, and instructed the jury to disregard them. But the situation was one which called for stern rebuke and repressive measures and, perhaps, if these were not successful, for the granting of a mistrial. It is impossible to say that the evil influence upon the jury of these acts of misconduct was removed by such mild judicial action as was taken. 295 U.S. at 85, 55 S.Ct. at 632.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. ABA Standards, The Prosecution Function, § 5.8.

The prosecutor in this case singlehandedly violated each of these commands.[4] Untold damage was done to the defendant. As a result, the conviction cannot stand.

## II

We would be remiss if on this occasion we did not recall the "heavy responsibility [of prosecutors] . . . to conduct criminal trials with an acute sense of fairness and justice." *Id.* at 1330. It is the duty of every trial lawyer not to assert "his personal opinion as to the justness of a cause, as to the credibility of a witness, . . . or as to the guilt or innocence of an accused. . . ." ABA Code of Professional Responsibility § DR7–106(C)(4). Furthermore, as a government attorney a prosecutor is in a particularly sensitive position. In this regard, we cannot improve upon the classic words of Justice Sutherland in *Berger*:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. 295 U.S. at 88, 55 S.Ct. at 633.

## III

In this case, the prosecutor lost sight of his twofold duty and thereby prejudiced substantial rights of the defendant.[5] It is our duty, therefore, to reverse the conviction so a fair and impartial trial can be afforded.

REVERSED.

---

**4.** *See also* ABA Canons of Professional Ethics No. 22: "It is not candid or fair for the lawyer knowingly to misquote . . . the testimony of a witness . . . or in argument to assert as a fact that which has not been proved."

**5.** We do not intend to indicate that only the prosecuting attorney in this case is worthy of

blame. Indeed, the trial judge has an obligation in the interests of fairness and justice to stop the prosecutor from delivering a greatly prejudicial argument sua sponte. *See Viereck v. United States,* 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943). See also note 3 *supra.*