UNITED STATES of America,
Plaintiff-Appellee,

v.

Oscar Homero OCHOA and Ernest Garza
Gonzalez, Defendants-Appellants.

No. 77–5089

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 16, 1977.

Rehearing Denied Jan. 16, 1978.

Joe L. Hernandez, San Antonio, Tex., for Ochoa.

Anthony Nicholas (Court Appointed), Terrence McDonald, San Antonio, Tex., for defendants-appellants.

Jamie C. Boyd, U. S. Atty., LeRoy M. Jahn, W. Ray Jahn, Asst. U. S. Attys., James E. Bock, Trial Atty., San Antonio, Tex., for plaintiff-appellee.

Before AINSWORTH, MORGAN and GEE, Circuit Judges.

AINSWORTH, Circuit Judge:

Defendants Oscar Ochoa and Ernest Gonzalez were convicted by a jury of conspiracy to possess heroin with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Both defendants contend that the trial court erred in admitting the testimony of the prosecution witnesses regarding the statements of coconspirators, as there was no independent evidence of a conspiracy. In addition, defendants urge that the court's failure to determine the existence of independent evidence of a conspiracy before admission of the coconspirators' statements was plain error and that the evidence was insufficient to support a conviction. Defendant Gonzalez insists that the admission

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al.* 5 Cir., 1970, 431 F.2d 409, Part I.

of certain statements made by the prosecutor in his closing remarks was plain error. After thorough review of the defendants' assertions, we affirm.

On July 25, 1976, Officer Russell Reina, working as an undercover agent for the Drug Enforcement Administration (DEA), telephoned Enrique Ramirez in San Antonio regarding the purchase of some heroin. Ramirez had previously told Officer Reina that he had several contacts involved in the sale of heroin. Four days later Officer Reina and Agent Castro accompanied Ramirez on a trip to the Rio Grande Valley for the purpose of negotiating the purchase of heroin. On their arrival in McAllen, Texas, the three travelers stopped at a convenience store where Ramirez called McAllen telephone number 686–3086 and asked for "Oscar." Ramirez was unable to get through to Oscar until later that afternoon. After talking with Oscar, Ramirez told Officer Reina that "the man" was coming to meet them, and twenty minutes later defendant Oscar Ochoa drove into the parking lot where Ramirez and the agents were waiting. Ochoa parked approximately 10 yards from Officer Reina's vehicle. Ramirez entered Ochoa's car and spoke with him for 15–20 minutes. Ramirez then informed the agents that Ochoa had agreed to set up a meeting to negotiate the sale of heroin. The agents handed Ramirez $10 to give Ochoa, and Ramirez told them that Ochoa was going to arrange the meeting with the source of the heroin and would return soon. The agents were to remain at the parking lot until Ochoa's return.

Surveillance agents tailed Ochoa to La Paloma Lounge and then to a residence at 2920 Gumwood Street. This residence is the location of the telephone number dialed by Ramirez on his arrival in McAllen. During Ochoa's absence Ramirez told the agents that Ochoa had found two sources of heroin, but that one source had left McAllen because of the late arrival of Ramirez and the agents. Ochoa drove back to the parking lot and Ramirez once again walked to Ochoa's car and conversed with him. Ramirez informed the agents that they were to meet the contact at La Paloma Lounge. But when Ochoa, Ramirez and the agents arrived at the lounge the contact was not there. Ramirez and Ochoa remained in the lounge and the agents left. On their return 30 minutes later the agents were told that "Ernie," the contact, had come and gone but that he was expected back shortly. Twenty minutes later Ernie had still not returned, and Ochoa went out to search for him. Shortly thereafter an automobile driven by defendant Ernest Gonzalez drove up to La Paloma Lounge. Ramirez stated, "[t]here he is, there's Ernie," and went up to Gonzalez's car and spoke with him for a couple of minutes. Ramirez then motioned the agents over to Gonzalez's car. Agent Castro walked over to it and was introduced to Gonzalez, who asked how much Castro was interested in purchasing. Agent Castro answered that the amount desired depended on the price and quality. Gonzalez assured the agent that the quality was good, and mentioned a price range. The conversation between Agent Castro and defendant Gonzalez lasted two or three minutes, at which point it was interrupted by the return of defendant Ochoa who said, "[t]here he is," referring to Gonzalez. Ochoa assured Agent Castro that Gonzalez could acquire "it" and that the quality was good. Gonzalez then left the parking lot to find the sources. After waiting 1½ hours for Gonzalez's return with the long-awaited heroin, the agents departed. Officer Reina spoke with Ramirez on four separate occasions after the evening of July 29 regarding drug purchases. In these taped phone conversations Ramirez mentioned both defendants in connection with the sale of heroin, and told Reina that the heroin deal was firmly arranged if Reina would return to McAllen.

### Independent Evidence of a Conspiracy

■ Both defendants insist that there was inadequate independent evidence of a conspiracy on the part of Ramirez, Ochoa and Gonzalez to support the admission of the agents' testimony as to the statements of the three men. The Government sought to present this testimony under Fed.R.Evid.

801(d)(2)(E), which provides that a statement of a coconspirator made during the course and in furtherance of the conspiracy is not hearsay. *See, e. g., United States v. Brown,* 5 Cir., 1977, 555 F.2d 407, 422–23. The existence of such a conspiracy must be demonstrated independently of the statements sought to be admitted. *See id.;* *United States v. Leaman,* 5 Cir., 546 F.2d 148, 150, *cert. denied,* 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). This court has held that a prima facie case of conspiracy must be presented in order to support the admission of coconspirators' statements. *See United States v. Oliva,* 5 Cir., 1974, 497 F.2d 130.[1] The evidence must be reviewed in the light most favorable to the Government. *See id.* at 133–34.

In the present case the testimony of the two undercover agents as to what they saw and the independently admissible testimony as to what they heard were enough to establish a prima facie case of conspiracy including Ramirez, Ochoa and Gonzalez. The behavior of Ochoa and Gonzalez was perfectly consistent with a conspiracy to distribute heroin to the two agents brought in by Ramirez. There was independently admissible evidence that Ramirez called Ochoa and that Ochoa met the agents and Ramirez in the parking lot, consulted with Ramirez in his automobile, and accepted the $10 tendered to him by the agents. Ochoa accompanied Ramirez and the agents to La Paloma Lounge. Ochoa eventually left the lounge to search for "Ernie." After Ochoa left, defendant Ernest Gonzalez arrived, and asked Agent Castro how much he wanted. Gonzalez also said that the quality was good and mentioned prices. When Ochoa returned he told Castro that Gonzalez was capable of delivering the heroin. The totality of this evidence constitutes a prima facie case of conspiracy.

■ Defendants contend that the trial court should have determined if there was sufficient independent evidence of a conspiracy before admitting the coconspirators' statements. Defendants rely on a recent First Circuit case, *United States v. Petrozziello,* 1 Cir., 1977, 548 F.2d 20 and Fed.R. Evid. 104(a)[2] as support for this contention. However, recent Fifth Circuit decisions have rejected this position, although without express reference to Fed.R.Evid. 104(a). *See United States v. Ellis,* 5 Cir., 1977, 547 F.2d 863, 867; *United States v. Leaman,* 5

1. *Oliva*'s prima facie case standard was reaffirmed in *United States v. Tyler,* 5 Cir., 1975, 505 F.2d 1329, 1332 and *United States v. Cravero,* 5 Cir., 1976, 545 F.2d 406, 418–19, *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977). However, in *United States v. James,* 5 Cir., 510 F.2d 546, 549, *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975), the court noted that the trial court has substantial discretion in determining whether there is adequate independent evidence. The *Cravero* court noted that the conspiracy itself must meet the prima facie case standard of proof, but that only "slight evidence" was required to connect declarant and defendant to the conspiracy.

2. Fed.R.Evid. 104(a) and (b) provides:
   (a) Questions of admissibility generally.— Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

   (b) Relevancy conditioned on fact.—When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition. The *Petrozziello* court reasoned that because admissibility was in issue, Fed.R.Evid. 104(a) should control, and the judge should determine the existence of a conspiracy (the predicate of admissibility) before allowing any of the coconspirators' statements to be presented at trial. Admissibility in this situation depends, however, on the existence of a conspiracy, a "fulfillment of a condition of fact" similar to that described in Fed.R.Evid. 104(b). *Cf. United States v. Brown,* 5 Cir., 1977, 555 F.2d 407, 423, nn. 38, 39 (noting the *Petrozziello* decision and the ambiguities regarding the application of Rule 104(a) and (b) in this context). In any case, the First Circuit in *Petrozziello* did not find admission of coconspirators' statements before proof of the conspiracy to be plain error. As the defendants here did not object at trial, our review is also limited to plain error.

Cir., 546 F.2d 148, 150, *cert. denied,* 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977).[3]

### Jury Argument

■ Defendant Gonzalez urges that the prosecutor's closing argument contained five improper and prejudicial remarks. As neither defendant made a timely objection at trial, our scope of review is limited to plain error. *See, e. g., United States v. Arteaga-Limones,* 5 Cir., 529 F.2d 1183, 1190, *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976).

Gonzalez strongly urges that these five statements are prejudicial under the standard set forth in *United States v. Corona,* 5 Cir., 1977, 551 F.2d 1386. In *Corona* the prosecutor made remarks that the court found were intended to bolster the testimony of government witnesses. The *Corona* court stated that "[i]t should be abundantly clear by now that '[i]t is impermissible for the prosecutor to assert his own credibility as a basis for conviction.' " *Id.* at 1389, *quoting United States v. Herrera,* 5 Cir., 1976, 531 F.2d 788, 790.

The prejudicial effect of a prosecutor's argument must be judged on the basis of the whole argument taken in the context of the entire case. *See United States v. Corona,* 5 Cir., 1977, 551 F.2d at 1388. In *Corona* the "bolstering" of the prosecution witness was accompanied by improper remarks suggesting guilt by association and the statement that a codefendant had already pled guilty. But in *United States v. Serrano,* 5 Cir., 1974, 496 F.2d 81, the prosecutor's improper remarks were limited to the type of vouching for credibility condemned in *Corona,* and the court still found such remarks reversible error. In *Serrano* the court described the defendant's appeal as

claiming plain error. The body of the opinion did not mention the plain error standard and instead focused on rejecting the prosecution's claim of harmless error. In any case, the *Serrano* argument was so close in content to the summation condemned in *United States v. Brown,* 5 Cir., 1971, 451 F.2d 1231, as to make a finding of plain error understandable. In *United States v. Arteaga-Limones,* 5 Cir., 529 F.2d 1183, 1190, *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976), on the other hand, prosecutorial remarks that could be viewed as vouching for the credibility of government witnesses were found not to be plain error.

The remarks in the present case do not rise to the level of plain error. The prosecutor avoided bald statements of personal approval of the undercover agents' reputation or conduct, unlike the prosecutors in *Serrano* and *Corona,* and never plainly vouched for the credibility or approved of the conduct of the agents. The first remark complained of simply expressed the prosecutor's wish to be identified with the agents as part of an anti-drug traffic team.[4] The second remark requires somewhat more discussion, but still is not prejudicial.

> If you think the agents conspired to enter into some kind of hideous plot—and put me in it, too—some kind of plot against these poor defendants, then by all means come back with your verdict of not guilty.

This statement could be interpreted as a suggestion to the jury that if they believe the agents are lying then the prosecutor must also be lying, and, by implication, that if they do not believe the prosecutor is lying then the agents must be telling the truth.[5]

---

**3.** *But see United States v. Gomez-Rojas,* 5 Cir., 507 F.2d 1213, 1223, *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

**4.** The prosecutor said:

They (the agents) were hoping that eventually they would be able to get back in touch with them and have them deliver, have them introduce us or the agents—I am proud to say "us" in that respect—have them intro-

duce us to the sources of supply to these men.

**5.** *Cf. United States v. Arteaga-Limones,* 5 Cir., 529 F.2d 1183, 1190, *cert. denied,* 429 U.S. 920, 97 S.Ct. 315 (1976) (a statement with similar implications was found improper and unprofessional, but nonetheless not plain error). *But cf. United States v. Herrera,* 5 Cir., 1976, 531 F.2d 788 (prosecutor made several improper remarks, among them the statement that in order to find the defendant not guilty the jury must

A more plausible reading of the statement is that the prosecutor is merely emphasizing the improbability of such a "hideous plot" to frame the defendants.

The third statement challenged as prejudicial is plainly innocuous.

> I am sorry that we don't have the importer of the heroin discussed in this case or the heroin. I would give a year's salary to be able to get them.

Although such a statement is irrelevant to the determination of the defendants' guilt or innocence, it is very hard to see how a prosecutor's declaration of personal zeal for law enforcement can prejudice a defendant's case. The fourth remark is equally harmless. Expressions of admiration for the agents' commitment to their work cannot alone constitute prejudice to the defendant.[6]

The final contested statement expressed the prosecutor's wish to take the jury's place and decide the case.[7] The defendants did not object at trial, and therefore our review is limited to plain error. In *United States v. Dawson*, 5 Cir., 1973, 486 F.2d 1326, 1330, this court encountered an identical closing argument and squarely held that it did not constitute plain error.

■ Defendants' final contention that the evidence was insufficient to convict them of conspiracy to distribute heroin is clearly meritless. Ramirez, Ochoa and Gonzalez all took the stand to attempt to contradict the testimony of the two undercover agents. The jury obviously believed the agents, and this credibility choice cannot be overturned on appeal. There is ample evidence to support the conclusion that Ramirez, Ochoa and Gonzalez conspired to sell heroin to the undercover agents.

AFFIRMED.

believe that the government witnesses and the prosecutor conspired to wrongfully convict the defendant. The court found that the cumulative result was a denial of fair trial).

6. The challenged statement is:
   I also thank God we have agents like this who will do the job necessary to try and combat this heroin traffic that we all know about, and I hope we all hate, we all loathe and detest . . . .

7. The prosecutor's statement was:
   You have heard the evidence in this case, ladies and gentlemen, all of it, and it is going to be your verdict to return based on that evidence and that testimony. It will be your verdict based on that testimony, ladies and gentlemen, but I wish it was mine. Thank you.