**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Benton Franklin THOMAS and Joseph
Thomas Oliveti,
Defendants-Appellants.**

No. 77-5136.

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1978.

Rehearing and Rehearing En Banc
Denied March 8, 1978.

Kerry J. Nahoom, Fort Lauderdale, Fla., for Thomas.

P. D. Aiken, Fort Lauderdale, Fla., for Oliveti.

Jack V. Eskenazi, U. S. Atty., Karen L. Atkinson, Asst. U. S. Atty., Jon A. Sale, Asst. U. S. Atty., Chief, Criminal Division, Miami, Fla., for plaintiff-appellee.

Before COLEMAN, HILL, and RUBIN, Circuit Judges.

COLEMAN, Circuit Judge.

Along with Jacob Cochran,[1] Benton Franklin Thomas and Joseph Thomas Oliveti were charged in a one-count indictment with knowingly and intentionally conspiring to import into the United States cocaine and marijuana in violation of 21 U.S.C.A. § 963. After being found guilty in a trial by jury, Thomas was sentenced to one year in prison and three years on special parole while Oliveti was sentenced to six months in prison and three years special parole. They appeal.

The defendants argue that the trial court committed reversible error in that it (1) admitted hearsay statements before a prima facie case of conspiracy was established and the evidence, as a matter of law, was insufficient to prove conspiracy; (2) the federal agents acted in such an outrageous manner as to deny the defendants due process; (3) the trial court erred when it refused to instruct the jury regarding predisposition of the defendants when federal agents acted in an allegedly outrageous manner; (4) the trial court erred in denying a motion for acquittal based on entrapment as a matter of law; (5) the trial court erred in giving a modified "*Allen* charge" to the jury when it had deliberated less than two hours; (6) the trial court failed to declare a mistrial after the prosecuting attorney made several allegedly prejudicial comments; and (7) the trial court erred when it failed to dismiss the indictment because the prosecuting attorney failed to present the grand jury with exculpatory evidence in her possession.

After reviewing the applicable law, and the evidence in the light most favorable to the government, *Glasser v. United States,*

---

1. Also indicted as a co-conspirator was Gerald Patrick Hemming. Hemming only participated in one meeting with Thomas in late March, 1976. The record is unclear as to the disposition of the charge against Hemming. Jacob Cochran was to have been tried with Thomas and Oliveti but failed to appear. The trial court tried the case against Thomas and Oliveti, severing Cochran until such time as he could be found and brought to trial.

315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we affirm the convictions.

## I. FACTS

This conspiracy prosecution was based almost in its entirety upon conversations the defendants had with undercover Drug Enforcement Administration ("DEA") agents. The agents met with Thomas more than fourteen times and with Oliveti twice, but they never purchased, confiscated or saw any narcotics. Other than an agreement that sometime in the future the defendants would import some cocaine no act of illegality was established.

From January through early June, 1976, Thomas met with the DEA agents on several occasions to discuss narcotics transactions. In these meetings, Thomas boasted in rather incredible detail about organizations he belonged to and how he could smuggle drugs into the United States, but these meetings produced no narcotics. At one point, Thomas agreed to deliver several "kilos" of cocaine to the agents for a specified price. He later reneged on the deal, claiming that the boat containing the narcotics had been confiscated by Colombian officials. Throughout the sequence of meetings, Thomas made representations about delivery of cocaine and how he could bring it into the United States when he brought in a shipment of marijuana but no delivery was ever made. During these meetings Thomas repeatedly asked the agents to advance him money so he could make a delivery but the agents never advanced any.

There were several pieces of "tangible" evidence the agents collected during these early meetings with Thomas. He was the manager of a flying service and did have access to aircraft. At one meeting Thomas gave the agents the business card of an alleged Honduran narcotics contact, who was a public official in that country. He also warned the agents to avoid a man named "Kiki", who, he said, was an informer for the DEA. The undercover agents knew that "Kiki" was an informer so they concluded that Thomas had some sophistication in the narcotics trade or he would not have had this information.

In an April, 1976, meeting Thomas told the agents he was going to Honduras to arrange a sale and gave them the name and telephone numbers of his contact there. At trial the government presented no direct evidence that Thomas actually made the trip but it did introduce an airline ticket issued to "B. F. Thomas" for Honduras. The ticket was issued the day before Thomas told the agents of his intended trip and was used by someone two days after the meeting with the agents. However, there was no direct proof that Thomas, the talker, and Thomas, the ticket holder, were in fact one and the same person.

In June, 1976, the DEA agents met with Thomas and alleged co-conspirator Jacob Cochran. At that meeting Thomas and Cochran tried to sell the agents pills which were purported to be amphetamines. The agents took a sample and, after laboratory analysis, discovered that they were antihistamines, common cold tablets. The agents told Thomas of their discovery and cancelled any further deal for the tablets.

In July, 1976, defendant Thomas, defendant Oliveti, and Jacob Cochran twice met with agents to arrange the importation of cocaine. In the presence of the other alleged conspirators, Oliveti stated he knew of the agreement and was capable of obtaining transportation for the shipment. (Tr. 344). Oliveti asked questions about the size of the airfield to be used in Colombia, the availability of fuel, and the time that an airplane would have to remain on the ground.

A final meeting was held in early August with the agents, Thomas, and Cochran. Expense money was requested (but none was given) and a tentative commission for smuggling the cocaine was agreed on. Cochran gave the agents a written breakdown of the costs. After three weeks nothing more had happened, whereupon the defendants-appellants and Cochran were indicted for conspiracy and arrested.

■ In summary, we look upon this as a most unusual case. There were many meetings and much talk—a lot of smoke and no fire. The indictment alleged various overt acts as having taken place in furtherance of the conspiracy, but these consisted solely of the meetings, in which the talk took place. It would appear that in drafting the indictment the prosecutor was proceeding under 18 U.S.C. § 371, which does require an "act to effect the object of the conspiracy". The defendants, however, were not indicted under that statute but, instead, were charged, as the indictment recited, under 21 U.S.C. § 963,[2] a section which prescribes no such requirement, see *United States v. Palacious,* 5 Cir. 1977, 556 F.2d 1359, 1364, n. 9; *United States v. Beasley,* 5 Cir. 1975, 519 F.2d 233, 247, *vacated and remanded on other grounds,* 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976) (no overt act was required under the conspiracy to distribute statute, 21 U.S.C. § 846, which is similar to the conspiracy to import narcotics statute used here, 21 U.S.C. § 963); *United States v. Bermudez,* 2 Cir. 1975, 526 F.2d 89, 94 (no overt act required for conviction under 21 U.S.C. § 846). The trial court instructed the jury that they must find that an overt act had been committed by one of the conspirators. (Tr. 460). We can easily understand why it did so because several Fifth Circuit cases have proceeded under the *assumption* that 21 U.S.C. § 963 or its sister statute, dealing with conspiracy to distribute, 21 U.S.C. § 846, requires that overt acts be alleged and proved. *See United States v. Bright,* 5 Cir. 1977, 550 F.2d 240, 241; *United States v. Seelig,* 5 Cir. 1974, 498 F.2d 109, 112, and *United States v. Toombs,* 5 Cir. 1974, 497

F.2d 88, 94. In fact, this instruction placed a greater burden on the government than it was required to shoulder and thus inured to the advantage of the defendants rather than their prejudice.

■ A thorough analysis of the trial record convinces us that there was an abundance of evidence from which a jury could believe beyond a reasonable doubt that the defendants did indeed unlawfully conspire although they may have taken no action to execute the conspiracy, see *United States v. Johnson,* 5 Cir. 1974, 496 F.2d 1131.

## II. POLICE CONDUCT

■ Next, the defendants argue that an offer by the DEA agents during the course of the conspiracy to supply an airplane and crew at one time and the name of a foreign supplier of cocaine at another was police conduct so outrageous that it violated their Fifth Amendment rights to due process. Further, they contend that this violation would bar their prosecution or, in the alternative, require the trial court to instruct the jury that if they found the police conduct was outrageous it would avoid their predisposition to conspire.

The defendants cite *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), and *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) but we are of the opinion that these cases militate against defendants' position.

In *Hampton,* the Supreme Court held that a criminal defendant should not be automatically acquitted simply because the narcotics he sold were supplied by a govern-

---

**2.** 21 U.S.C. § 963 provides, "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 18 U.S.C. § 371 on the other hand states, "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, *and one or more of such persons do any act to effect the object of*

*the conspiracy,* each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

This is not the first time a specific conspiracy statute has been held not to require an overt act to be proven. *See Singer v. United States,* 323 U.S. 338, 340, 65 S.Ct. 282, 89 L.Ed. 285 (1945) (no overt act required for conspiracy offense under draft evasion statute); *Nash v. United States,* 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232 (1913) (same for the Sherman Act).

ment agent. In *Russell*, a government agent provided an ingredient necessary to manufacture an illegal drug. The Court held that the agent's participation in the criminal activity was not of such an intolerable degree as to bar prosecution.

A reading of those cases reveals that government agents in both *Russell* and *Hampton* actually participated or provided a necessary element of the crime. The Supreme Court held in *Russell* and *Hampton* that the government agents' actions did not bar conviction. Here, we have DEA agents who only *offered* aid but never helped or participated in a substantive criminal act. The offers appear to have been efforts to flush out further evidence of cocaine smuggling activity. There may be instances where the actions of law enforcement agents are so outrageous as to bar prosecution, but we do not find that in this case.

The defendants also argue that the trial court should have acquitted them because, as a matter of law, they had been entrapped. While entrapment may defeat a conspiracy charge it will not do so if the criminal intent originates with the conspirators, even though the government furnishes the opportunity to carry out the crime, *United States v. Puma*, 5 Cir. 1977, 548 F.2d 508, 510. The evidence shows that these defendants were knowledgeable about the narcotics trade; they discussed various methods to smuggle contraband into the country; and they appeared anxious to receive a down payment for a future shipment. They were willing, not induced, participants in what went on here.

### III. PROSECUTORIAL MISCONDUCT

The defendants urge that we should reverse their convictions because of prosecutorial misconduct both before the grand jury and at trial. The defendants cite several instances of statements made by the prosecuting attorney which they allege prejudiced their opportunity for a fair trial. A review of the trial instances reveals that the statements complained of were not prejudicial or were adequately corrected by instructions by the trial court so that they could not have had a prejudicial effect on the jury.

Also complained of was the failure of the government to present evidence to the grand jury which the defendants thought would have been exculpatory. This contention is wholly without merit.

### IV. PRIMA FACIE CASE; SUFFICIENCY OF THE EVIDENCE

Appellants argue that the trial court reversibly failed to comply with Rule 104, Fed.R.Evid.:

(a) *Questions of admissibility generally.* Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges. . . .

Under the teachings of *United States v. Ochoa*, 5 Cir. 1977, 564 F.2d 1155, 1156, this argument fails.

■ At the beginning of the government's case, the DEA agents testified to the events and conversations of the July meetings held with defendants Thomas and Oliveti and co-conspirator Cochran. The agents testified that Oliveti offered to smuggle cocaine and marijuana into the United States. Oliveti went further to say that Thomas and Cochran would accompany him on the clandestine operation. These statements were made in the presence of Thomas and Cochran. This was enough and established a prima facie case, *United States v. Ochoa, supra; United States v. Amato*, 5 Cir. 1974, 495 F.2d 545, 549, *cert. denied*, 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 286; *United States v. Oliva*, 5 Cir. 1974, 497 F.2d 130, 132–33.

### V. THE "*ALLEN* CHARGE"

■ The trial in this case ended on a Friday afternoon. The jury began deliberations on Friday but because of the lateness of the hour it was dismissed after an hour

of discussion. It returned the following Monday morning. After forty-five minutes deliberation the foreman sent a note to the judge stating that it could not reach a unanimous verdict. After discussion by counsel from both sides, the Court recalled the jury and gave the following charge:

> You should endeavor to reach an agreement, if at all possible. The case has been ably tried by both sides. In endeavoring to arrive at a verdict, you must keep in mind that in order to return a verdict each of you must agree. You have a duty to consult with one another and to deliberate with a view to reach an agreement if it can be done without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.
>
> You should examine the issue submitted to you with an open mind and with candor and with proper regard and deference to the opinions of others.
>
> In the course of your deliberations you should not hesitate to reexamine your own views and change your opinion if you are convinced that it is erroneous.
>
> You should not, however, surrender your honest conviction as to the weight or the effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Yet you should listen to each other's arguments with a disposition to be convinced.
>
> I want you now to return to the jury room and resume your deliberations and discuss the matter amongst yourselves in a friendly spirit and endeavor to agree upon a verdict if you can do so.
>
> I will ask you to return to your jury room for further deliberations. (Tr. 484–485).

The defendants concede that an *"Allen"* charge is not improper in this Circuit. *United States v. Bailey,* 5 Cir. 1973, 480 F.2d 518 (en banc). They argue, however, that the giving of the charge when the jury had deliberated for less than two hours was an abuse of discretion and prejudicially placed pressure on the jurors to reach a unanimous verdict.

The judge did not arbitrarily call the jury back to give the instruction. He acted only in response to word from the jury that a unanimous verdict could not be reached. At that point he gave only a modified form of the *"Allen"* charge, within the guidelines of *United States v. Skinner,* 5 Cir. 1976, 535 F.2d 325. (Tr. 480). No deadlines were set and the jury was warned not to surrender honest convictions for the sake of reaching unanimity. The Court struck from the charge language that was considered misleading by the defendants. (Tr. 483).

While elapsed time prior to the charge could in ordinary circumstances be considered unusually short, the judge did not act of his own motion with no reported inability to agree. The jury had reported an impasse and was seeking direction. The giving of the charge, as phrased, did not produce reversible error.

The convictions are

AFFIRMED.