**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David GARZA, Defendant-Appellant.**

**No. 78–5648.**

United States Court of Appeals,
Fifth Circuit.

Dec. 21, 1979.

Oscar J. Pena, Laredo, Tex., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, FAY and RUBIN, Circuit Judges.

GOLDBERG, Circuit Judge:

This case presents nothing new—no new issue of law or unique factual configuration. It presents rather a situation far too common and too often condemned by this court to be in any manner excusable. We must deal again with grossly improper prosecutorial comment during closing argument which substantially prejudiced defendant's right to a fair trial on the evidence presented in his case.

David Garza was convicted by a jury on counts of conspiracy, distribution of heroin, and possession of heroin with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Government's case rested heavily upon the testimony of Juan Juarez, a "cooperating individual"—that is, a confidential informant—and Rudy Gonzales, an agent of the Drug Enforcement Administration, who worked as an undercover agent in the case. Juarez and Gonzales testified as to their participation directly with Garza and his co-conspirator David Sauceda in setting up and carrying out the alleged heroin transactions in Laredo, Texas, which formed the basis for the prosecution. Garza's defense, however, was alibi; he presented a number of witnesses who testified that at the time the Government contended he was participating in the heroin transactions, he was actually helping move a trailer in a trailer park in Laredo. Garza's defense was not insubstantial, and therefore a major issue in the trial became the credibility of Juarez and Gonzales and that of Garza's alibi witnesses.

The major issue presented on this appeal arises from remarks of the prosecutor in his closing argument in which he sought personally to vouch for the credibility of Juarez and Gonzales and to bolster the Government's case by indicating that it would not have been brought, and he would not personally have participated, if Garza's guilt had not already been determined. During the opening of his argument, the prosecutor stated that David Sauceda, Garza's alleged co-conspirator, was

[o]ut there at that Boys Club and never left until after he got arrested for mur-

der. Out there selling heroin, selling to somebody else that is trying to improve the reality. Rudy Gonzales, the man from San Antonio that came over here. He wants to make this a better place. He wants to improve things. He wants to make that a prettier picture on the wall than it is right now.

Those pictures are sometimes hard to face. We don't like to look at the things. We don't like to do things that are unpleasant. None of us do. Being on the jury is unpleasant. But don't you know Rudy Gonzales' job is unpleasant too? Don't you know, even though Juan Juarez gets paid for what he is doing and probably paid pretty well, that even that is unpleasant. But it's something that needs to be done.

Rudy Gonzales and these other officers over here made a responsibility that they accepted upon themselves when they took that job to go out and improve that total picture. And I think he's a dedicated man, and you know what? You accepted the responsibility too, in this jury.

A few minutes later, the prosecutor returned to, and amplified, these themes:

And there isn't any reason in the world why Rudy Gonzales would take that stand. He's a professional man. He has been in this a long time. And if he wasn't good at it over there when he was doing it for the San Antonio Police Department, if he wasn't doing his job right over there, do you think he would ever have gotten on with the Drug Enforcement Administration? He did, and he has been with the Drug Enforcement Administration for 4 years.

If Mr. Juan Juarez wasn't doing the right thing, wasn't doing what he said he should do, he said that every case he had ever worked on had been a conviction. That's what he said. For 8 years. Do you think he would still be doing it? Do you think anybody would tolerate his wasting the taxpayers' money if he wasn't doing a good job? They get up here and say that's the man. If it wasn't the man, they wouldn't have any reason

to say it, ladies and gentlemen. They would just go on off about their business and do something else.

Those people and the Government has [sic] no interest whatsoever in convicting the wrong person. But the person who does these things has a lot of interest in getting off the hook, doesn't he? He sure does.

Defense counsel in his closing argument attacked the credibility of Juarez and Gonzales. He argued that Juarez had stated that he was paid for his work on a case-by-case basis and that, unless he made a case, he would not be paid. As for Gonzales, defense counsel argued that alleged inconsistencies in his testimony undercut his credibility. Then, after arguing that the Government had not proved Garza's guilt beyond reasonable doubt, he anticipated the prosecutor's argument on the need to protect society from criminals and added, "Fine, I want to protect society from criminals, and you do too, but I don't want innocent people going to jail, and I'm sure you don't either."

In his rebuttal argument, the prosecutor responded to these comments by enlarging upon his original themes:

And he [defense counsel] said something else that kind of irritated me at one point. He said that he hoped an innocent man was not found guilty. I have been doing this kind of work for a long time. He's a defense lawyer, and I told you while ago that I thought Rudy Gonzales over here was a professional man. And I think these Drug Enforcement Administration people are professionals. And I think the record of being able to move from one job to another job and staying in that work as long as they have indicates that they are professionals. He talks about motive. I think their motives are pure as the driven snow. Their motives are to get out and make this world a better place to live in. A better place to

live in, and I'll tell you they don't have to fabricate to do it because there is enough wrong going on and there is enough corruption going on out there that if you just go out and walk around the streets and know what you are looking at and looking for you just bump right into it. You don't have to frame anybody.

And, ladies and gentlemen, if I thought that I had ever framed an innocent man and sent him to the penitentiary, I would quit. Now, I resent the innuendoes that I would stand up here and try to send an innocent man to the penitentiary, and that's what it was. I resent that because it's simply not true because, believe you me, there is presently enough work to do without fooling around with innocent people. Plenty enough. All over the place.

Defendant challenges these remarks as improper closing argument which substantially prejudiced his right to a fair trial. We agree.[1]

A criminal trial provides a neutral arena for the presentation of evidence upon which alone the jury must base its determination of a defendant's innocence or guilt. Attorneys for both sides, following rules of evidence and procedure designed to protect the neutrality and fairness of the trial, must stage their versions of the truth within that arena. That which has gone before cannot be considered by the jury except to the extent it can be properly presented at the trial and those things that cannot properly be presented must not be considered at all.

The role of the attorney in closing argument is "to assist the jury in analyzing, evaluating and applying *the evidence.* It is not for the purpose of permitting counsel to 'testify' as an 'expert witness.' The assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence." *United States v. Morris,* 568 F.2d 396, 401 (5th Cir. 1978). (emphasis in origi-

1. Garza raises several other contentions in this appeal, including challenges to other comments by the prosecutor in his closing argument. Since the comments set out above are so clear-

ly improper and so obviously require reversal, we find it unnecessary to discuss the other points raised.

nal) To the extent an attorney's closing argument ranges beyond these boundaries it is improper. Except to the extent he bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses. *See, e. g., United States v. Rodriquez,* 585 F.2d 1234, 1243–44 (5th Cir. 1978); *United States v. Morris, supra,* 568 F.2d at 401; *Hall v. United States,* 419 F.2d 582, 585–87 (5th Cir. 1969). Furthermore, he may not suggest that evidence which was not presented at trial provides additional grounds for finding defendant guilty. *See, e. g., United States v. Morris, supra,* 568 F.2d at 401; *Hall v. United States, supra,* 419 F.2d at 587; *Gradsky v. United States,* 373 F.2d 706, 710 (5th Cir. 1967).[2]

■ It is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government's attorney or the sanction of the government itself as a basis for conviction of a criminal defendant.

> The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says. That same power and force allow him, with a minimum of words, to impress on the jury that the government's vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.

*Hall v. United States, supra,* 419 F.2d at 583–84. The Supreme Court emphasized the special responsibility and status of the government's attorney in *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934). Justice Sutherland, writing for the Court, stated:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

> It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Id.* at 633. This analysis of the prosecutor's "double burden" has been carried forward in numerous cases from this Court. *See, e. g., United States v. Corona,* 551 F.2d 1386, 1391 (5th Cir. 1977); *Washington v. United States,* 327 F.2d 793, 795 (5th Cir. 1964); *Hall v. United States, supra,* 419 F.2d at 587–88; *Handford v. United States,* 249 F.2d 295, 296 (5th Cir. 1957).

We must now turn to an examination of the prosecutor's comments in this case in light of the rules outlined above and this Court's cases applying them. We must first determine whether the prosecutor's argument was improper and, if so, whether it "prejudicially affect[ed] substantial rights of the defendant." *United States v. Corona, supra,* 551 F.2d at 1388.

■ In his remarks set forth above, the prosecutor made extremely improper re-

---

2. Such improper comments by an attorney also violate his ethical responsibilities. It is the duty of an attorney not to "[a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness, . . . or as to the guilt or innocence of an accused . . . .." ABA Code of Professional Responsibility § DR7–106(C)(4) (1976). *See generally* ABA Standards, The Prosecution Function § 5.8.

marks of two varieties, both of which have often been discussed by this Court.[3] First, the prosecutor sought personally to bolster the credibility of its key witnesses, Juarez and Gonzales, by reference to matters which were outside the record in the case. For instance, he inserted repeatedly his opinion of their motives. Of Gonzales, for example, the prosecutor insisted, "He wants to make this a better place. He wants to improve things. He wants to make that a prettier picture on the wall than it is right now." At another point, the prosecutor asserted that Juarez and Gonzales "get up here and say that's the man. If it wasn't the man, they wouldn't have any reason to say it, ladies and gentlemen." On rebuttal he took up this cudgel again, asserting of both Gonzales and Juarez, "I think their motives are pure as the driven snow. Their motives are to get out and make this world a better place to live in." Aside from personally vouching for his witnesses' motives and general integrity, the prosecutor attempted to bolster their credibility by maintaining that they had taken on the responsibility for doing an "unpleasant job" and that they were "professional" and "dedicated" men, doing a good job and the "right thing."

In all these attempts, the prosecutor's argument was improper, and this court has all too often had to make such a determination. In *Gradsky v. United States, supra,* the Court condemned the prosecutor's statements that the government did not put on a witness "unless there appears to be some credibility, until he appears to be a truthful witness," because it found that "the government's belief in the credibility of the witness was based on something other than the evidence of record." *Id.* at 710. Similarly, this court has condemned a prosecutor's statements that he knew a witness to be "a fine F.B.I. officer" and "[a] man of absolute integrity." *Hall v. United States, supra,* 419 F.2d at 585–87. In *United States v. Corona, supra,* the court found improper the

prosecutor's argument that government agents who had testified in the case "did the best they could under the circumstances," and were doing "a dirty, nasty job" and were "associating daily with dirty, nasty people, because I, for one, consider dope dealers and dope traffickers as dirty, nasty people." *Id.* at 1388. These statements were held to have impermissibly asserted the prosecutor's credibility as a basis for conviction. *Id.* at 1389. Finally, where the prosecutor maintained in his closing that a government agent/witness "did a real good job" and "was doing his duty to his country," the Court held such statements to be outside the record and therefore impermissible comment, requiring reversal of defendant's conviction. *United States v. Brown,* 451 F.2d 1231, 1235–36 (5th Cir. 1971).

The prosecutor's attempts to bolster his witnesses' credibility in this case crossed the boundary of proper comment in all the respects noted above. He not only attempted to assert his own credibility as a foundation for that of his witnesses, but attempted to take advantage of his status as government's attorney to give sanction to his witnesses' testimony and to suggest that the "government's vast investigatory network" knew, from information not presented at trial, that these witnesses were telling the truth.

■ The prosecutor entered a second line of improper comment when he argued that the prosecution would not have been commenced, and that he personally would not have participated unless it had already been determined that defendant was guilty. At one point, he argued that "those people [the government agents] and the Government has [sic] no interest whatsoever in convicting the wrong person." On rebuttal, he resumed this tack, stating at one point, "And, ladies and gentlemen, if I ever thought that I had framed an innocent man and sent him to the penitentiary, I would

---

**3.** In selecting examples of improper comment for our discussion below, we have attempted to be only illustrative, not exhaustive. The longer quotations from the prosecutor's closing argument set out above are virtually textbook examples of what a closing argument should *not* be.

quit."[4] This entire line of argument presumed that the whole government apparatus, and the prosecutor individually, had reached a determination of the defendant's guilt before the trial and implied that the jury should give weight to this fact in making its determination.

This particularly egregious form of argument has also been considered and condemned by this Court. In *Hall v. United States, supra,* the Court considered the prosecutor's statement that "we try to prosecute only the guilty." In holding the statement indefensible, the Court stated:

> Expressions of individual opinion of guilt are dubious at best. . . . This statement takes guilt as a pre-determined fact. The remark is, at the least, an effort to lead the jury to believe that the whole governmental establishment had already determined appellant to be guilty on evidence not before them. . . . Or, arguably it may be construed to mean that as a pretrial administrative matter the defendant has been found guilty as charged else he would not have been prosecuted, and that the administrative level determination is either binding upon the jury or else highly persuasive to it. Appellant's trial was held and the jury impaneled to pass on his guilt or innocence, and he was clothed in the presumption of innocence. The prosecutor may neither dispense with the presumption of innocence nor denigrate the function of the trial nor sit as a thirteenth juror.

*Id.* at 587. (Citations and footnotes omitted) *Hall*'s reasoning was expressly adopt-

ed in *United States v. Lamerson,* 457 F.2d 371, 372 (5th Cir. 1972), to condemn the prosecutor's statement, "and, Mr. Lamerson, had [he] not committed a crime, we would not be [prosecuting him]. It's as simple as that." The prosecutor's statements here are fully as improper as those in *Hall* and *Lamerson.*[5]

Our finding that the prosecutor's comments were improper does not end our inquiry. Since defense counsel failed to object to these comments at trial, we must determine whether they rise to the level of "plain error"—that is, errors or defects "affecting substantial rights" of the defendant. Fed.R.Crim.P. 52(b). "[W]hen an appellate court should take notice of an error not raised below must be made on the facts of the particular case, and there are no 'hard and fast classifications in either the application of the principle or the use of the descriptive title.' " 3 Wright, Federal Practice and Procedure § 856, at 373 (1969), *quoting Dupoint v. United States,* 388 F.2d 39, 45 (5th Cir. 1968).

██ While any single statement among those we have isolated might not be enough to require reversal of the conviction—and, indeed, some clearly would not—we think it beyond question that the prosecutor's improper comments, taken as a whole, affected substantial rights of the defendant. As already discussed, perhaps the most important problem facing the jury was its decision whether to credit the testimony of Gonzales and Juarez, the government witnesses, or that of defendant's alibi witness-

---

**4.** This statement was ostensibly in response to defense counsel's argument to the jury that, while society needed protection from criminals, such need did not justify convicting innocent people. But while defense counsel's argument can at most be construed as contending that the evidence did not warrant defendant's conviction, prosecution's argument went far beyond the evidence and sought to invoke the prosecutor's own credibility as a basis for a conviction.

**5.** The government has excavated and relied upon an old case from the Seventh Circuit to defend this type of comment. There, the court

found the prosecutor's statement not improper when he argued, "If I, in my own mind, thought for one minute that these defendants were not parties to this case, I certainly wouldn't have the courage to stand up here and argue before you that they were guilty. It is never our intention to prosecute and try innocent men." *United States v. Battiato,* 204 F.2d 717, 719 (7th Cir. 1953), *cert. denied,* 346 U.S. 871, 74 S.Ct. 118, 98 L.Ed. 380 (1953). This decision is in clear conflict with the newer and, we feel, better reasoned precedents from this circuit. We therefore decline to follow it, even if it is still good law in the Seventh Circuit.

es.[6] The prosecutor's comments that we have considered were expressly intended to influence this critical credibility choice; he introduced for the jury's consideration his own personal opinion as to this choice, suggested the existence of information beyond that presented at trial to support his witnesses' credibility, and sought to use the status and influence of the entire government investigatory apparatus to bolster the believability of his case. It is impossible to imagine this strategy did not have substantial influence on the jury. Furthermore, while defense counsel could and, indeed, should have objected to the first instances of improper comment by the prosecutor, at some point the transgressions of this prosecutor cumulated so greatly as to be incurable; then objection to these extremely prejudicial comments would serve only to focus the jury's attention on them.[7] In addition, as this Court observed in overturning a conviction because of improper prosecutorial comment, despite a corrective instruction, once such statements are made, the damage is hard to undo: "Otherwise stated, one 'cannot unring a bell'; 'after the thrust of the saber it is difficult to say forget the wound'; and finally, 'if you throw a skunk into the jury box, you can't instruct the jury not to smell it.'" *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962). Finally, this Court has several times recognized in similar contexts the necessity for holding such comments as were made here to be "plain error." *See, e. g., United States v. Corona*, 551 F.2d at 1388 n. 2; *Ginsberg v. United States*, 257 F.2d 950, 955 (5th Cir. 1958).

The prosecutor in this case ignored the "double burden" imposed upon him as the government's attorney both to conduct his case zealously and to assure that justice is done by complying fully and fairly with the rules of conduct by which he is bound. He sought instead a triple burden: prosecutor, judge and jury. A prosecutor can be vigorous without being venomous; forceful without being fanatical; adversarial without being *a priori*. Here the prosecutor failed to observe these elementary principles of advocacy. Because his conduct so prejudiced defendant's right to a fair trial as to amount to "plain error", we reverse the conviction and remand the case to the district court.

REVERSED AND REMANDED.

---

6. The jury apparently found the case quite close despite the prosecutor's improper attempts to influence it. It took eleven hours for the jury to reach a verdict.

7. We think important to note that in such circumstances the trial judge has an obligation to intervene to assure protection of defendant's right to a fair trial. As the court noted in *United States v. Corona, supra*, 551 F.2d at 1391n5 n. 5, "We do not intend to indicate that only the prosecuting attorney in this case is worthy of blame. Indeed, the trial judge has an obligation in the interests of fairness and justice to stop the prosecutor from delivering a greatly prejudicial argument sua sponte. *See Viereck v. United States*, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943)."